539 P.2d 584

Fred HOFFMAN et al., Plaintiffs-Respondents,

v.

SIMPLOT AVIATION, INC., et al., Defendants-Appellants.

No. 11648.

Supreme Court of Idaho.

Aug. 8, 1975.

Rehearing Denied Sept. 18, 1975.

---

**34**

Phillip M. Barber, of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for defendants-appellants.

E. Don Copple, of Davison, Copple & Copple, Boise, for plaintiffs-respondents.

SHEPARD, Justice.

This is an appeal from a judgment in favor of plaintiffs-respondents following trial and jury verdict in an action resulting from an airplane accident. The principal questions presented are: 1) whether the rule of strict liability in tort in the field of products liability as adopted by this Court in *Shields v. Morton Chemical Co.*, 95 Idaho 674, 518 P.2d 857 (1974) should be extended beyond sales and into the area of personal services, and, 2) the application of the doctrine of implied warranty to personal services and availability of the defenses of fault or negligence. We decline to so extend the rule of strict liability and hold that the jury was erroneously instructed as to the doctrine of implied warranty. We reverse and remand for a new trial.

The facts giving rise to this action, while lengthy in recitation, are not particularly complex or involved nor are they essentially in dispute between the parties. The case is remarkable in this respect, however, that a structural part of an early vintage single engine airplane failed during flight causing its crash and the pilot is alive to prosecute this action.

In 1971 plaintiff-respondent Fred Hoffman purchased a 1939 Piper Cub single engine airplane for $1,500. It was cleaned and repaired with Hoffman doing much of the work himself. In September 1971 Hoffman was attempting to land that aircraft on a landing strip at a farm near Boise. On landing, the plane hit a ditch causing the left landing gear to fold beneath the aircraft, bending the propeller and damaging the left wing tip. In November 1971 Hoffman contacted defendant-appellant Simplot Aviation, Inc. relative to the repair of the aircraft. During the course of conversations there was discussion relative to the desirability of transporting the airplane on a trailer to the Simplot facility at Boise Airport. A decision was made [by whom it is not clear] to repair the plane at the farm strip to the extent that it could be flown to the Boise Air Field for further repairs at the Simplot facility.

Defendants-appellants Gasparotti and Larson, employees of Simplot, were dispatched to the farm landing strip where they dismantled portions of the aircraft and transported them to the Simplot facility. On December 4, they returned to the landing strip with new parts and those that had been repaired which they installed in and on the aircraft. A visual examination of the entire aircraft was then made by Gasparotti, during which he also inspected and tested the brakes and tachometer of the aircraft.

Gasparotti and Larson possessed substantial background in the field of maintenance and repair of small aircraft. They possessed inspection authorization from the Federal Aeronautics Administration and held airframe and power plant mechanic's licenses from that agency. The licenses authorized them to perform work on aircraft and to verify the quality of work of other mechanics and "sign-off" log books for small aircraft. Following the repairs, inspection and testing, Gasparotti, in the absence of Hoffman, left a note commenting on certain of the repairs that had been made and also wrote "one take off one landing" on the note. Gasparotti indicated that the meaning of that term was that on the basis of his field inspection he thought a ferry permit was in order for the transportation of the aircraft by air to the Simplot facility at Boise Airfield.

Upon the return of Hoffman to the landing strip he discovered Gasparotti's note and verified it by a telephone call to Gasparotti. Shortly thereafter Hoffman flew the airplane off the farm landing strip intending to fly the plane to the Simplot facility at the Boise Airfield.

The left wing of the aircraft was supported by a strut extending from the under side of the left wing diagonally and downward to a point on the fuselage of the aircraft near the left landing gear. A clevis bolt held the wing strut braced into the aircraft fuselage. Shortly before Hoffman's intended landing at the Boise Airfield it appears that the clevis bolt failed and broke. The failure of the clevis bolt permitted the strut to break free from the fuselage of the aircraft causing a portion of the left wing to loosen and rip upwards. These occurrences took place while Hoffman was preparing to enter the traffic pattern at the Boise Airfield at an altitude of between 900 and 1,000 feet. The structural failure of the aircraft resulted in a spin and subsequent crash just short of the Boise Airfield.

It is apparently conceded by all that none of the repair work performed by the Simplot employees was a causative factor in the crash of the aircraft. Similarly no part or product placed upon the aircraft by the Simplot employees was a causative factor. While the Simplot employees were repairing the damage to the left landing gear which was occasioned by the first accident, they were working in close proximity to the clevis bolt which attached the left wing strut to the fuselage.

The principal factual dispute relates to the condition of the clevis bolt at the time that the Simplot employees had completed the repairs and made the visual inspection of the aircraft. There was testimony to the effect that the bolt showed signs of rust and therefore failure could have been anticipated. However, the Simplot employees denied that the rust was visible to them as they worked on and inspected the aircraft and that because of the age and condition of the aircraft rust had no significance.

Hoffman, his wife, and his partner in the ownership of the aircraft brought suit for damages against Simplot, Gasparotti and Larson. Plaintiffs alleged liability on four theories. One, negligence, 2) breach of express warranty, 3) breach of implied warranty, and 4) strict liability. At the conclusion of trial, lengthy jury instructions were given by the trial judge, including instructions on all four of the theories of liability.

The jury returned two forms of special verdict. On the first, the jury found both parties equally negligent, thus holding against Hoffman in accordance with Idaho's comparative negligence statute. I.C. § 6–801. On the second special verdict the jury found against Hoffman on the theory of strict liability and also against Hoffman on the theory of express warranty. However, on the theory of breach of implied warranty and only on that theory the jury returned a verdict in favor of Hoffman. Damages were assessed at $11,600 and judgment entered for that amount.

Appellants argue that the trial court erred in accepting special verdicts from the jury which were inherently contradictory in themselves and also in giving jury instructions setting forth plaintiffs' theories of strict liability and implied warranty.

In *Shields v. Morton Chemical Company*, 95 Idaho 674, 518 P.2d 857 (1974) this court adopted the rule of strict liability in tort as set forth in the Restatement of the Law, Torts 2nd, § 402(A) (1965). The Restatement deals specifically and only with the sale of a product. Neither this court nor, with one exception, any other court has adopted strict liability in tort absent fault in the context of personal services. We decline to extend the rule of *Shields* to cases involving personal services. We find no consideration of such extension of the rule of strict liability in either the Uniform Commercial Code or the Restatement of Torts, 2nd. Almost uniformly any such extension of the rule has been consistently and expressly rejected. See *Gagne v. Bertran,* 43 Cal.2d 481, 275 P.2d 15 (1954); *Shepard v. Alexian Bros. Hospital,* 33 Cal.App.3d 606, 109 Cal.Rptr. 132 (1973); *Hoover v. Montgomery Ward & Co., Inc.,* 528 P.2d 76 (Or.1974); *Pepsi Cola Bottling Co. v. Su-*

*perior Burner Service Co.,* 427 P.2d 833 Alaska 1967). We find *Broyles v. Brown Engineering Co.,* 275 Ala. 35, 151 So.2d 767 (1963) to be unpersuasive. *See also* Prosser, Law of Torts, 679 (4th ed. 1971), 2 R. Hursh & H. Bailey, American Law Products Liability, 2nd § 6–15, 6–18 (1974).

It would serve no purpose herein to extensively review the policy considerations which militate against the extension of the strict liability rule to cases involving personal service. The rationale has been thoroughly explored in the authorities and commentators set forth above and reiteration herein would serve no purpose. It is sufficient to say that as contrasted with the sales of products, personal services do not involve mass production with the difficulty, if not inability, of the obtention of proof of negligence. The consumer in the personal service context usually comes into direct contact with the one offering service and is aware or can determine what work was performed and who performed it.

■ We therefore hold the instructions of the trial court dealing with the theory of strict liability in the case at bar constituted error. The jury held against the plaintiff on the theory of strict liability and therefore defendants-appellants would not ordinarily be heard to complain. Our reversal and remand for a new trial for reasons stated *infra* has required the foregoing discussion.

It is undisputed here that none of the materials or services of the defendants in the actual repair of the aircraft caused the accident. Any liability for breach of implied warranty must be based on defendants' inspection of the aircraft following the performance of the repairs and their failure during that inspection to discover the defect in the clevis bolt. The jury could have found that the defect in the bolt should have been discovered by defendants since they were working in close proximity thereto when they were performing the repairs on the landing gear. It is conceded by appellants that the issue of appellants' negligence posed a jury question. In effect, it is also conceded by appellants that there was a question of express warranty correctly submitted to the jury resulting from the written and verbal communications of Gasparotti.

■ Appellants' assign error to the trial court's instruction on the doctrine of implied warranty. The only theory upon which the jury found against the defendants-appellants in this case was in its special verdict relating to implied warranty. Appellants assert that the special verdict on implied warranty could only have resulted from the instruction setting forth that theory. We agree. We also agree that such instruction was erroneous in that it permitted the jury to find liability absent any proof of fault or negligence by the defendants. Unfortunately our holding is not yet dispositive since the case will be tried again and we must determine if the theory of implied warranty was correctly before the court and, if so, the correct theory of implied warranty must be supplied. *Messmer v. Ker,* 96 Idaho 75, 524 P.2d 536 (1974).

■■ It is clear that in a sales transaction an implied warranty may be imposed upon the seller to the effect that the goods are merchantable or are fit for the particular purpose for which purchased. I.C. §§ 28–2–314, 315. In circumstances involving personal services, however, the warranty is implied that the services will be performed in a workmanlike manner. The standard imposed may vary depending upon the expertise of the actor, either possessed or represented to be possessed, the nature of the services and the known resultant danger to others from the actor's negligence or failure to perform.

However, as stated in the landmark case of *Gagne v. Bertran,* 43 Cal.2d 481, 275 P. 2d 15 (1954):

"The services of experts are sought because of their special skill. They have a duty to exercise the ordinary skill and competence of members of their profession, and a failure to discharge that duty

will subject them to liability for negligence. *Those who hire such persons are not justified in expecting infallibility, but can expect only reasonable care and competence. They purchase service, not insurance.*" (Emphasis supplied) 275 P. 2d at 21.

*See* American Law of Products Liability 2nd, Hursh & Bailey, § 6–15 and Restatement of Torts, 2nd § 404.

 The more vexing problem of theory is the distinction, if any between the doctrines of implied warranty and negligence in circumstances involving the rendering of personal services. Although such causes of action are generally thought to be independent of each other, in the instant circumstances they merge into one cause of action. A fundamental component in a negligence action is the existence of a duty (most often to refrain) toward another and a breach thereof. In circumstances involving the rendition of personal services the duty upon the actor is to perform the services in a workmanlike manner. *Pepsi Cola Bottling Co. v. Superior Burner Service,* 427 P.2d 833 (Alaska 1967) is remarkably similar in its problems of theory and doctrine to the case at bar. Justice Rabinowitz there concluded that in the area of personal services there is a duty upon the actor to perform in a workmanlike manner and there is an implied warranty that the services will so be provided. However, it was there stated:

"Whether the tort standard of care is considered, or the duty of care imposed by an implied warranty of workmanlike performance is taken as the applicable standard, in our view the resultant standard of care required of appellee's employees in the circumstances of this case is identical. In both instances the standard of care is imposed by law and under either theory there is no difference in the standard of care required of the party rendering the personal services.

"Characterization of the gist, of gravamen, of appellant's cause of action in the factual context of this case is not free of difficulties. Whether an action is one in contract or tort may have significant procedural and substantive ramifications. In the case at bar appellant's central argument in support of its contention that it was entitled to go to the jury on both a tort cause of action and breach-of-an-implied-warranty-of-workmanlike-quality cause of action is that *contributory negligence would not be a bar to recovery under the latter.*" (Emphasis supplied) 427 P.2d at 840–841.

 The difficulty in drawing the distinction between breach of warranty and an action in negligence is well pointed out by Dean Prosser, Strict Liability to the Consumer, 69 Yale L.J. 1099 (1960). He there points out that an action for breach of warranty originally sounded in tort and that the later cases considering warranty as sounding in contract have led the courts into the error of requiring contractual privity in products liability cases. He states:

"The adoption of this particular device was facilitated by the peculiar and uncertain nature and character of warranty, a freak hybrid born of the illicit intercourse of tort and contract. 'A more notable example of legal miscegenation could hardly be cited than that which produced the modern action for breach of warranty. Originally sounding in tort, yet arising out of the warrantor's consent to be bound, it later ceased necessarily to be consensual, and at the same time came to lie mainly in contract.'" 69 Yale L.J. at 1126.

We hold that under the circumstances of the case at bar the implied warranty theory of plaintiffs should have been submitted to the jury with proper instructions. *Contra: Pepsi Cola Bottling Co. v. Superior Burner Service, supra.* The jury should have been instructed that plaintiffs were entitled to have defendants' services rendered in a workmanlike manner. The standard of care so imposed on the defendants should

be determined in light of relevant factors such as: The inherent danger posed by an aircraft; the expertise possessed, or represented as possessed, by the defendants; the knowledge of the defendants' intended use of the aircraft, and the contributory negligence of or assumption of the risk by the plaintiffs, if any, in consideration of factors such as the age of the aircraft, its previous status and record of repair and maintenance and the previous accident.

Plaintiffs-respondents argue that the recent case of *S. H. Kress & Co. v. Godman,* 95 Idaho 614, 515 P.2d 561 (1973) militates against our result here. We do not agree. In *Kress* personal services were involved and there as here defendants were called to make repairs and it was alleged that such were made negligently. There also, it was argued that following the repairs an inspection in the immediate repair area would have revealed defects in parts which later caused an accident. *Kress* was reversed on the sole basis that the existence of a duty on the repairman and a breach thereof were questions which should have been submitted to the jury. There it is implicit that the cause of action was brought in negligence and that the contributory negligence of the owner was a defense. So in the case at bar we hold that contributory negligence or assumption of the risk are defenses to plaintiffs' theory of implied warranty.

In summary we hold that plaintiffs-respondents were entitled to have their theory of implied warranty submitted to the jury. Since the case involved the rendition of personal service, a cause of action does not exist for breach of implied warranty in the absence of fault on the part of the actor. The jury should be instructed also that the defenses of contributory negligence or assumption of the risk are available to defendants-appellants.

Appellants also assert that the special verdict forms returned by the jury were inherently contradictory to one another, therefore fatally defective and should have been rejected by the trial court. That contention does not merit discussion or treatment here since we have held *supra* that the trial court's instructions on the theory of strict liability were error and on retrial, hopefully, the possibility of contradictory special verdicts will not exist.

Reversed and remanded for a new trial consistent with this opinion. Costs to appellants.

McQUADE, C. J., and DONALDSON and BAKES, JJ., and SCOGGIN, District Judge (Retired), concur.