552 P.2d 776

**IDAHO STATE UNIVERSITY, Plaintiff-Respondent,**

v.

**Leslie L. MITCHELL, d/b/a Mitchell Construction Co., Defendant-Appellant.**

**Leslie L. MITCHELL, d/b/a Mitchell Construction Co., Third-Party Plaintiff-Respondent,**

v.

**BINGHAM MECHANICAL & METAL PRODUCTS, INC., an Idaho Corporation, Third-Party Defendant-Appellant.**

Nos. 11735 and 11736.

Supreme Court of Idaho.

Feb. 26, 1976.

Rehearing Denied April 22, 1976.

Michael G. Brady, Moffatt, Thomas, Barrett & Blanton, Boise, for appellant Mitchell Const. Co.

Gary T. Dance, Merrill & Merrill, Pocatello, for third party defendant-appellant Bingham Mechanical & Metal Products, Inc.

Herman J. McDevitt, McDevitt & McDevitt, Pocatello, for respondent Idaho State University.

BAKES, Justice.

On July 1, 1970, the interior of the recently completed but never before used sports arena of Idaho State University at Pocatello (hereinafter "ISU"), the "Minidome," was flooded with over a foot of water and tons of silt and debris which damaged the arena's artificial turf. The incident occurred because one of the two water pipes which supplied the structure had failed. In an attempt to recover its costs of repair and cleanup, ISU sued the contractor, Mitchell Construction Co., and the architect, Cedric M. Allen, on theories of negligence and breach of contractual warranties. Subsequently, Mitchell filed a third party complaint against Bingham Mechanical & Metal Products, Inc., the subcontractor which installed the water pipe that had failed.

The water pipe that broke ran laterally from a water main which paralleled the west side of the sports arena and entered the building at its southwest corner. There was a similar lateral pipe running from the same water main which entered the building at the northwest corner. These pipes were laid by Bingham Mechanical on backfill soil which was compacted by Mitchell Construction according to specifications made by the architect Cedric Allen.

In late 1973, prior to Mitchell's third party complaint against Bingham Mechanical, depositions were taken of Brent Ballif, a consulting engineer who was employed by both ISU and the architect; John Korbis, the director of the physical plant at ISU; the architect Allen; and the contractor Mitchell. These depositions focused on the sufficiency of the architect's plans and specifications for laying of the water pipes and the requirements for compaction of the backfill on which the pipe was laid, the manner in which the pipe was laid and the soil compacted, and theories as to the cause of the pipe failure. On November 14, 1973, Mitchell filed its third party complaint against Bingham Mechanical. On November 23, 1973, ISU moved for summary judgment against Mitchell Construction Co. and thereafter the architect Allen moved for summary judgment in his favor.

In a memorandum decision and order dated February 26, 1974, the trial court ruled that there was no genuine issue of fact concerning the alleged negligence of the architect and granted summary judgment in his favor against ISU. It then concluded that ISU's motion for summary judgment on the issue of liability should be granted against Mitchell, based on the warranty given by the contractor. In this same opinion the trial court determined that Mitchell Construction Co. had a right to look to Bingham Mechanical for indemnification based on the subcontractor's warranty given to the contractor. There had been no motion for summary judgment on the third party complaint made by either Mitchell or Bingham Mechanical, but the court reasoned that the issues were so interrelated that the entire matter should be disposed of together. Formal orders were entered granting partial summary judgment on the issue of liability in favor of ISU against Mitchell Construction Co., and in favor of Mitchell Construction Co. against the subcontractor, Bingham Mechanical, and also granting the architect's motion for summary judgment. Bingham Mechanical filed a motion for relief from judgment on the ground that the trial court was without jurisdiction to grant summary judgment against the subcontractor when no motion for such summary judgment was before it, which motion was denied.

Following a hearing on the issue of ISU's damages, judgment was entered in the main action on June 3, 1974. On July 25, 1974, judgment was entered in the indemnification action against Bingham Mechanical. Mitchell and Bingham Mechanical appeal from these judgments, while ISU has acquiesced in the judgment entered in favor of the architect. Since these two appeals raise different questions of law, we will consider them separately.

### NO. 11795: ISU v. MITCHELL CONSTRUCTION CO.

A. The Contract:

The construction of the Minidome was divided into three distinct contracts. The Phase I contract encompassed construction solely of the superstructure itself; the Phase II contract included the construction of the substructure and the general construction of the stadium, up to and including the asphalt subfloor upon which the artificial turf was placed. The third contract was for the procurement and installation of the artificial turf. Mitchell Construction Co. was the successful bidder for Phase II of the contract, entering into the contract with the Idaho Department of Public Works in 1968.

The "General Conditions of the Contract for Construction," plaintiff's exhibit "C", governs the duties and relationships among the owner (ISU), the contractor (Mitchell Construction Co.) and the architect (Allen). This document is divided into fourteen articles. Article 4 of the contract governs the activities of the contractor. Section 4.18.1 of this article is entitled "Indemnification" and reads as follows:

"4.18 INDEMNIFICATION

"4.18.1 The Contractor shall indemnify and hold harmless the Owner and the Architect and their agents and employees

from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (b) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder."

Article 13 of the contract relates to the unconvering and correction of work. Section 13.2.2 provides:

"13.2.2 If, within one year after the Date of Substantial Completion or within such longer period of time as may be prescribed by law or by the terms of any applicable special guarantee required by the Contract Documents, any of the Work is found to be defective or not in accordance with the Contract Documents, the Contractor shall correct it promptly after receipt of a written notice from the Owner to do so unless the Owner has previously given the Contractor a written acceptance of such condition. The Owner shall give such notice promptly after discovery of the condition."

Article 1 of the General Conditions of the Contract defines certain terms which are used as words of art throughout the document. "The Work" is defined as:

"1.1.3 THE WORK

The term Work includes all labor necessary to produce the construction required by the Contract Documents, and all materials and equipment incorporated or to be incorporated in such construction."

Article 8, relating to time, defines the Date of Substantial Completion of the Work as:

"8.1.3 The Date of Substantial Completion of the Work or designated portion thereof is the Date certified by the Architect when construction is sufficiently complete, in accordance with the Contract Documents, so the Owner may occupy the Work or designated portion thereof for the use for which it is intended."

The architect Cedric Allen issued to Mitchell Construction a certificate of acceptance of Phase II on May 4, 1970, two months prior to the pipe failure.

Initially we note the rule to be that if parties to a contract have provided the measure of damages to be recoverable for breach of the duties imposed by the contract, they are bound by such provision and liability thereunder is restricted to the terms of the contract. *Grant Construction Co. v. Burns,* 92 Idaho 408, 443 P.2d 1005 (1968). Barring questions of unconscionability or public policy, such provisions are upheld even where the effect is to limit a party's common law liability for breach of contract. *Magar v. Lifetime, Inc.,* 187 Pa. Super. 143, 144 A.2d 747 (1958); *Southwest Forest Industries, Inc. v. Westinghouse Electric Corp.,* 422 F.2d 1013 (9th Cir. 1970). Since the Phase II contract between ISU and Mitchell Construction Co. contained provisions governing the liability of the contractor under the contract, those provisions must be applied regarding the existence and the extent of its liability if recovery is predicated on that contract rather than a separate tort theory.[1]

1. ISU's complaint alleges both liability in tort and breach of contractual warranties. Since summary judgment was granted against Mitchell based on its contractual warranties, our review is limited to the propriety of that action in the warranty context. The applicability of the tort theory, which raises many factual issues not suitable for resolution on a motion for summary judgment, is not before the Court. Thus we do not consider whether

Upon close examination of the record and the contract documents which have been included in the record,[2] we note that any recovery based on contractual warranties appearing in the record which the contractor gave to ISU must fall within the indemnification section, § 4.18.1, or within the section providing for correction of defective work, § 13.2.2. Since we determine that the judgment against the contractor cannot be affirmed under either of these contractual warranties, we must reverse and remand this case to the trial court.

### B. The § 13.22 Warranty:

This provision states that if any of the Work is found to be defective or not in accordance with the contract documents within one year after the date of substantial completion, the contractor will promptly correct it. The language conditions the contractor's liability under this warranty to any of *the Work* which is found to be *defective* or *not in accordance with the contract documents,* and appears to impose liability without fault in claims arising under this provision. The language also limits the extent of liability under this warranty to *prompt correction* of the defective or otherwise non-conforming Work. We deal first with the question of liability under this section and then with the question of remedy.

In his deposition Leslie L. Mitchell, the sole owner of Mitchell Construction Co., gave an explanation similar to the other three deponents that the cause of the pipe failure was a leak in the pipe itself. He specifically rejects other theories of causation, but repeatedly reiterates his "theory" that the pipe broke because it had a slow leak arising from an opening of unknown origin in the pipe, and that it was the gradual introduction of water emanating from the pipe itself into the subsurface soil which ultimately resulted in the soil washing and settling, which caused the shearing of the pipe in half. Since the water pipe was material which was incorporated into the construction, it was part of the Work (§ 1.1.3), and consequently the record before the trial court on ISU's motion for summary judgment supports the conclusion that a part of the Work was defective.

Therefore, liability of the contractor Mitchell to ISU for the failure of this water pipe may be predicated on the warranty contained in § 13.2.2, but the damages available to ISU under this warranty are expressly and narrowly limited to prompt correction of the defective Work. However, the award given by the trial court in this case included not only damages for correction of the defective Work (by absolving ISU from liability to the contractor for its replacement and repair of the pipe and the area around it which was done at the contractor's expense), which is the extent of recovery under this section, but also included $42,732.25 for the costs of cleanup and restoration of the interior of the Minidome which was flooded by the break, together with $15,000 in attorney fees. Damage to the turf, cleanup of the turf and attorney fees are clearly not part of the correction of the defective Work. The turf was not part of the Phase II contract and therefore was not part of the Work as that term is defined in

---

the express contractual provision in § 4.18.1 has the effect of limiting Mitchell's tort liability to negligence, *cf.* I.C. § 28-2-719 and *Southwest Forest Industries, Inc. v. Westinghouse Electric Corp.,* 422 F.2d 1013 (9th Cir. 1970); *Council Brothers, Inc. v. Ray Burner Co.,* 473 F.2d 400 (5th Cir. 1973); when other non-negligent tort theories might be available. *Shields v. Morton Chemical Co.,* 95 Idaho 674, 518 P.2d 857 (1974); *cf. Hoffman v. Simplot Aviation, Inc.,* 97 Idaho 32, 539 P.2d 584 (1975).

2. Appellant Mitchell Construction Co. alleges in its brief an additional guarantee which it gave to ISU, that the installation would be free from mechanical defects. (Appellant's Brief, pp. 8, 32). This guarantee is said to be included in the specifications for the Phase II contract. This guarantee is not included in the record before us, however, and thus we must conclude that it was not before the trial court when that court ruled on the motions for summary judgment. Consequently, our decision here intimates no opinion as to the applicability of that guarantee to these facts.

§ 1.1.3 of the Phase II contract. Not being part of the Work, the damage to and cleanup of the turf was not recoverable under § 13.2.2. We cannot affirm the damages awarded in the judgment based on the warranty in § 13.2.2 of the contract, although we do affirm the trial court's conclusion of law absolving ISU from liability for Mitchell's repair of the pipe.[3]

C. The § 4.18.1 Indemnification Provision:

If liability under this indemnification provision is established, the scope of recovery is very broad. The contractor will indemnify ISU "from and against all claims, damages, losses and expenses including attorneys' fees . . . ." It is under this contractual provision that ISU seeks to justify its recovery, because if it can predicate liability on § 4.18.1, the trial court award must be affirmed. The problem again divides into questions of the existence and the extent of liability, and under § 4.18.1 it is the narrow conditions of the contractor's liability which must be scrutinized.

§ 4.18.1 sets forth two conditions which must be satisfied to establish liability under its provisions: (1) that the damage claimed is attributable "to injury to or destruction of tangible property (*other than the Work itself*"; and (2) that the damage be *"caused . . . by a negligent act or omission of the contractor . . . ."* (Emphasis added). It is incumbent upon ISU, as plaintiff, to establish both of these requirements in order to recover under § 4.18.1 of the contract. In contrast to § 13.2.2, this section does not impose liability without fault, but requires that negligence of the contractor or his agents be established.

Appellant Mitchell argues that § 4.18.1 is plainly inapplicable because the damage claimed falls within the exception to the first condition; that is, the property damaged was the Work itself. ISU responds that the tangible property injured and the damages arising therefrom was not the Work under the Phase II contract, but was part of the third contract for the artificial turf. Further, the costs claimed were unrelated to the construction of Phase II of the arena or materials incorporated therein. The distinction made by respondent ISU correctly interprets the contract. However, at the trial on the issue of damages held May 15, 1974, the testimony did not definitively state that all of the monetary damages represented in the schedule of claims paid in connection with the stadium restoration, plaintiff's exhibit A, were for repair of property, other than the Work under Phase II of the contract. Since it is crucial to recovery under § 4.18.1 that the damage claimed (which may be cost of cleaning and repair) be to property other than the Work itself, on retrial ISU must submit proof that its claims for repair and restoration and damage to the stadium were to property other than the Work itself, which is excepted from recovery under § 4.18.1.

The second condition that must be satisfied in order to recover under § 4.18.1 is that the damage be caused by a negligent act or omission of the contractor. Questions of negligence and causation are normally factual issues which must be determined by the trier of fact, *Smith v. City of Preston,* 97 Idaho 295, 543 P.2d 848 (1975); *Schaefer v. Elswood Trailer Sales,* 95 Idaho 654, 516 P.2d 1168 (1973); *Davis v. McDougall,* 94 Idaho 61, 480 P.2d 907 (1971). The record does not reveal any direct evidence of negligence by the contractor or any of his agents; rather it indicates that no one had any firm knowl-

---

3. The record intimates that the claim submitted by Mitchell Construction Co. for $11,-589.95, listed in Plaintiff's Exhibit A, was for repair of the broken pipe and the damage done to that portion of the stadium which was part of the Phase II Work. ISU had not paid that claim and did not seek recovery of that amount, but only sought to absolve itself of liability to Mitchell on the $11,-589.95 claim for correcting the defective Phase II Work, i. e., the broken pipe and adjacent area.

edge why the pipe failed. To the extent that circumstantial evidence pointed to negligence of Mitchell as the cause of the pipe failure, the inferences to be drawn from the circumstantial evidence are to be made by the trier of fact. Prosser, Law of Torts, § 40, p. 229 (4th ed., 1971). Summary judgments in negligence actions are not common. They are most often granted in favor of the defendant where the plaintiff has failed to establish the defendant's liability. It is the unusual case in which the plaintiff has established such a strong case of the defendant's negligence that it could prevail on a motion for summary judgment. 10 Wright & Miller, Federal Practice and Procedure, Civil, § 2729 (1970). This is not such a case. While Mitchell, and others, stated that it was their opinion that the pipe broke because of a leak in it, this was not the only possible inference which was susceptible from the facts. Mitchell, in his deposition, consistently claimed that the original design of the asphalt rain gutter was inadequate and that as a result water from the defective drain had entered the subsoil in the area where the pipe broke. However, he thought that the reconstruction of the gutter with a water barrier had cured that inadequate design problem. He didn't think those percolating waters from the original inadequate asphalt rain gutter caused the problem, although he candidly admitted that it was impossible to tell because, "When you've got a hole full of muck, you can't tell what it is." Tr., Vol. II, p. 456.

We cannot say, at this stage of these proceedings, that Mitchell's explanation of his "theory" of why the leak occurred admitted negligence on his part sufficient to establish liability under § 4.18.1 of the contract, or exonerated the architect from negligence which might have contributed to the damage suffered by ISU. The interrogatories, depositions and affidavits in the record disclose several other possible reasons for the pipe failure which might or might not be based upon the contractor's negligence. Since in ruling on a motion for summary judgment, " . . . it is not the function of the trial court to weigh the evidence or to determine [the] issues . . . ", Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 414, 353 P.2d 657, (1960), the trial court erred in granting summary judgment against Mitchell Construction Co. Questions of material fact exist concerning the negligence of the contractor under section 4.18.1, and therefore summary judgment based upon that indemnity provision cannot be sustained. Since the damages awarded to ISU against Mitchell Construction Co. cannot be supported under either of the contractual provisions described above, the summary judgment must be reversed and the cause remanded to the trial court for further proceedings. We do affirm, however, the trial court's finding of liability under section 13.2.2 of the contract, but remand for the determination of damages under that section which are limited to correcting the defective Work. Mitchell Construction Co. is not liable for consequential damages under that section.

D. The Question of the Architect's Liability:

Since this case must be remanded for further proceedings, we must confront the question which has been raised by the parties on appeal regarding the res judicata effect of the summary judgment entered in favor of the architect Allen, absolving him from liability to ISU for the pipe failure. I.C. § 1–205; Layrite Products Co. v. Lux, 86 Idaho 477, 388 P.2d 105 (1964). In its answer to ISU's complaint, and in an affidavit submitted in opposition to ISU's motion for summary judgment, Mitchell Construction Co. asserted as its defense that the pipe failure was attributable to improper plans and specifications and thus it was the architect's negligence which caused the damage. The architect had cross claimed against the contractor alleging that ISU's damages were caused by the contractor's negligence and that any judgment obtained by ISU against the architect should be indemnified by Mitchell Construction Co. No action was taken by the trial court on the architect's cross claim against Mitchell,

although the court did grant summary judgment in favor of the architect on ISU's complaint against him for negligent design. ISU has not appealed from that summary judgment. On appeal, Mitchell has continued to claim that a factual issue exists concerning improper design and inadequate or erroneous plans and specifications by the architect. ISU argues that Mitchell Construction Co. is foreclosed from raising this argument, since the subject of the architect's negligence was finally determined by the summary judgment entered in Allen's favor on the ISU complaint, from which no appeal was taken. Thus, a question arises whether the finding in that summary judgment precludes Mitchell from raising the architect's negligence as a defense.

▇▇▇▇ The principles of *res judicata* and collateral estoppel rest on the theory that the matter has been litigated to a final conclusion between the parties in a previous adversary proceeding. Certainly as between ISU and Allen the issue of the architect's liability to ISU is *res judicata.* That determination, however, is not binding on the contractor Mitchell under the traditional rules of *res judicata* because Mitchell was not a party to the judgment between ISU and the architect Allen. *Goolsby v. Derby,* 189 N.W.2d 909 (Iowa 1971); *Bernhard v. Bank of America,* 19 Cal.2d 807, 122 P.2d 892 (1942). However, even though not strictly bound by the doctrine of *res judicata,* there are times when a party may nevertheless be bound under the doctrine of collateral estoppel, even though he was not a party to the judgment. *Duff v. Draper,* 96 Idaho 299, 527 P.2d 1257 (1974); *Goolsby v. Derby, supra; see* Annot., *Mutuality of Estoppel as Prerequisite of Availability of Doctrine of Collateral Estoppel to a Stranger to the Judgment,* 31 A.L.R.3d 1044 (1970). As stated in the foregoing ALR3d annotation, at page 1052:

"In determining the availability of the doctrine of collateral estoppel notwithstanding a lack of mutuality or privity, the courts have taken into consideration various factors. The most important factors are whether the doctrine of collateral estoppel is used offensively or defensively, whether the party adversely affected by collateral estoppel had a full and fair opportunity to litigate the relevant issue effectively in the action resulting in the judgment, whether it would be generally unfair in the second case to use the result of the first case, and whether assertion of the plea of estoppel by a stranger to the judgment would create anomalous results. More specifically, important questions are whether the party adversely affected by collateral estoppel offers a sound reason why he should not be bound by the judgment; and whether the first case was litigated 'strenuously' or 'with vigor,' for instance, whether the former judgment was appealed . . . ."

We must determine, therefore, in applying these criteria to the case at bar, whether Mitchell Construction Co. is foreclosed by the judgment in favor of Allen and is precluded from continuing to argue that the architect was negligent. In these proceedings the architect and the contractor, as co-defendants, each asserted the other's negligence as an affirmative defense to ISU's complaint. The cross claim for indemnity brought by the architect against the contractor Mitchell was never answered by Mitchell and was never pursued by either party, but became moot when judgment was entered in favor of the architect on ISU's complaint against him. Mitchell does not assert the negligence of Allen as an adversary claim against Allen; rather, he does so in attempting to prove that it was the architect Allen's negligence which was the cause of ISU's injury, and to rebut the inferences arising from the circumstantial evidence which points to his negligence. Thus, the procedural status of this case is somewhat different than most cases which have dealt with the doctrines of *res judicata* and collateral estoppel.

For purposes of this discussion we must distinguish between the claim of *ISU v. Allen,* which litigation has gone to final judgment, and the claim of *ISU v. Mitchell,* which is before us on appeal. Mitchell was not a party to the judgment in *ISU v. Allen,* although he was a party to the action, and, as noted, he also raised the issue of the architect's negligence, albeit as a defense. Mitchell argues that he did not have an opportunity to fully litigate the issue of the architect's negligence prior to the entry of that judgment. Further, Mitchell's subcontractor, Bingham Mechanical, and its suppliers of the pipe, Grinnell Corp., and U. S. Pipe and Foundry Company, which the record indicates have now been brought into the action by Bingham as additional third party defendants, have not had an adequate opportunity to assert the architect's negligence as a cause of ISU's damage, rather than a defect in the pipe. ISU seeks to assert against Mitchell the matter which was conclusively determined in *ISU v. Allen*—i. e., that the architect was not negligent and was not liable to ISU for the pipe failure. Viewed in this light, it is apparent that (1) Mitchell, the party against whom estoppel is asserted, was not a party to that judgment; and (2) the party alleging the estoppel, ISU, is using it offensively, rather than defensively, two factors which have ordinarily prompted the courts not to apply the doctrine of collateral estoppel, *Bernhard v. Bank of America, supra;* 31 A.L.R.3d 1044.

■ Respondent ISU further argues that the contractor Mitchell is bound by the judgment in favor of the architect because Mitchell is a "party aggrieved" by the judgment in favor of the architect, since its interests were "injuriously affected" by it and Mitchell thus had a right to appeal that decision under I.C. § 13–103 and *Roosma v. Moots,* 62 Idaho 450, 112 P.2d 1000 (1941). ISU claims that since Mitchell failed to take an appeal from that judgment, he is now foreclosed from asserting issues that were decided in that judgment. It is not appropriate for us to decide whether Mitchell would have been entitled under I.C. § 13–103 to appeal the granting of summary judgment in favor of Allen and against ISU, since such an appeal is not before us. We only rule that the finality of the question of the architect's liability, *as between ISU and the architect,* does not preclude the contractor from continuing to assert as an affirmative defense that the architect's negligence was the cause of the damage. The rationale for holding that one co-defendant is not foreclosed from asserting the negligence of another co-defendant who has been successful in his defense against the plaintiff is explained in an annotation in 24 A.L.R. 3d 318, at page 330:

> "The reasoning underlying such a declaration is that the plaintiff controls the evidence and a defendant does not have control of the proceedings so as to enable him to exhaust the question of the codefendants' liability, and that when the defendants each deny negligence and claim that the others' negligence was the proximate cause of the plaintiff's injuries and offer evidence to sustain their respective claims, they are not litigating an issue between themselves but are offering matter in defense of the plaintiff's claim, the only issue being between the plaintiff and each of the defendants who were made parties at the will of the plaintiff, who could dismiss as to each defendant and the others could not be heard to complain."

We hold that in further proceedings to determine the extent of the contractor Mitchell's liability to ISU, Mitchell is not foreclosed by the judgment rendered in favor of the architect from alleging and proving as a defense that the negligence of the architect was the cause of the damage.

E. Issues on Remand in Appeal No. 11735:

1. The trial court shall determine the extent of damages resulting from the liability of Mitchell Construction Co. under section 13.2.2, as described above (which

may be granted by absolving ISU from liability to Mitchell for its replacement and repair of the pipe and the area around the break which was done at the contractor's expense).

2. The trial court shall determine whether or not, or to what extent there was damage to "tangible property (other than the Work itself) . . . caused in whole or in part by any negligent act or omission of the contractor, any subcontractor, anyone directly or indirectly employed by any of them . . . ."

3. ISU's right of recovery on tort theories.

## NO. 11736: MITCHELL CONSTRUCTION CO. v. BINGHAM MECHANICAL & METAL PRODUCTS, INC.

The reversal of the judgment against Mitchell would of necessity require the reversal of the judgment against Bingham. However, in view of the defenses raised by Bingham, it is necessary to discuss the action of the trial court in granting summary judgment in favor of Mitchell against Bingham when there was no motion for summary judgment before it. I.R.C.P. 56(c) provides that, "The motion [for summary judgment] shall be served at least ten (10) days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits." These sentences give a party several procedural rights: a ten day notice of the motion, a hearing on the motion and the right to submit affidavits in opposition to the motion. Further, there is implicit in I.R.C.P. 56 the requirement that there *be* a motion for summary judgment. *See Twin City Federal Savings & Loan Assoc. v. Transamerica Ins. Co.*, 491 F.2d 1122 (8th Cir. 1974); *Adams v. Campbell County School Dist.*, 483 F.2d 1351 (10th Cir. 1973); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 480 F.2d 607 (10th Cir. 1973); *Scott v. Courtesy Inns, Inc.*, 472 F.2d 563 (5th Cir. 1973); cases holding that the failure of a trial court to comply with the mandatory notice and hearing provisions under the comparable federal rule 56 is reversible error. While the weight of authority would support the granting of summary judgment in favor of a non-moving party in appropriate circumstances, 6 Moore's Federal Practice, § 56.-12, and *cf. Glenn Dale Ranches v. Shaub,* 94 Idaho 585, 494 P.2d 1029 (1972), this Court has never approved the granting of summary judgment when neither party has moved for summary judgment.

Mitchell Construction Co. argues that any prejudice to Bingham Mechanical arising out of this procedure was cured by the subsequent filing of a motion for summary judgment by Mitchell three months later when Bingham Mechanical did submit an affidavit in opposition to the belated motion, and upon which a hearing was held. The affidavit submitted by Bingham Mechanical contained the opinions of an expert who was president of the consulting firm which had conducted various metallurgical tests on the section of pipe that had fractured and had investigated the cause of the water line break on behalf of the subcontractor. These tests had been performed in September, 1970, shortly after the pipe failure occurred. The expert stated that there was no evidence that the break in the pipe was the result of a flaw in it, and it was his conclusion that the cause of the pipe fracture was infusion of water from other sources into the subsurface soil around the pipe which caused subsidence resulting in the shearing of the pipe.

The memorandum decision and order issued by the trial court in ruling on Mitchell Construction Co.'s subsequently filed motion, however, does not appear to consider Bingham Mechanical's affidavit in opposition to the motion, but instead treats the proceeding as a review of the alleged irregularities in the earlier proceeding in which summary judgment was entered against the subcontractor before any motion for summary judgment was filed. There had been a change of district judges

after the granting of the original motion for summary judgment, and the new judge stated that he would not presume that the earlier order was improperly issued, that it appeared to him as though Bingham Mechanical had been fully represented in the proceedings and that in the earlier proceeding the matter had been fully explored and presented. He then ordered that the earlier order of summary judgment in favor of Mitchell Construction Co. against Bingham Mechanical be allowed to stand.

We cannot agree that the subsequent motion, affidavits and hearing cured the irregularities in the earlier grant of summary judgment against Bingham Mechanical. The subcontractor Bingham Mechanical had only been a party to the suit for three months and had not participated in the depositions upon which the court's summary judgment heavily relied. Further, Bingham Mechanical possessed significant information which did raise genuine issues of fact concerning whether or not any defect in the pipe itself caused the break. In the initial summary judgment entered against Bingham Mechanical it did not have the opportunity to present this information. In the later proceeding which affirmed summary judgment against Bingham Mechanical, this information was before the court but it was apparently not considered. The subcontractor must be given the opportunity to prove its defense and to attempt to avoid liability under the contractual warranties which it gave to the contractor Mitchell. In reversing the judgment, we express no opinion on the merits of the subcontractor's defense or its probable liability under its contractual warranties.

In view of our disposition of this appeal, respondent ISU's motion for attorney fees on appeal is denied. The consolidated appeals are reversed and remanded. Costs to appellants.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.

### ON DENIAL OF PETITION FOR REHEARING

Plaintiff respondent Idaho State University petitioned this Court for rehearing alleging, among other things, that by our affirming defendant appellant Mitchell's liability under § 13.2.2 of the contract that the Court erred in not including in the award of damages the expenditure of funds to re-lay the asphalt under the turf, claiming that it was part of the Work. However, as the opinion of this Court points out, the trial court made no findings of fact concerning whether or not the damages claimed by ISU were to the "Work" as that term is defined in § 1.1.3 of the Phase II contract, and the opinion specifically remanded the matter to the trial court "for the determination of damages under [§ 13.2.2] which are limited to correcting the defective Work." That issue must be resolved by the trial court on remand.

The petition for rehearing is in all respects denied.