**Myrna DENNIS, Petitioner,**

**v.**

**T.H. ALLISON, Respondent.**

**No. C–3386.**

Supreme Court of Texas.

July 17, 1985.

Rehearing Denied Nov. 13, 1985.

Joel W. Westbrook, San Antonio, for petitioner.

Thompson and Knight, Richard E. Gray, Jr. and Stephen F. Fink, Dallas, for respondent.

CAMPBELL, Justice.

Myrna Dennis sued Dr. T.H. Allison for physically beating and sexually assaulting her while she was being treated for psychiatric problems. The sole theory of recovery preserved for this court's review is breach of implied warranty.[1] The issues submitted to the jury inquired whether Allison breached an implied warranty to follow the ethical commandments for psychiatrists by physically beating and sexually using Dennis. The jury answered affirmatively and found that the breach was a proximate cause of Dennis' damages. The trial court disregarded the jury's answers as immaterial and rendered judgment for Allison. The court of appeals affirmed the trial court's judgment. 678 S.W.2d 511 (1984). We affirm the judgments of the trial court and the court of appeals.

Prior to 1978, Dennis was a patient of Allison's for thirteen years. Dennis contacted Allison in 1978 and complained of job-related problems. Allison suggested she travel to Dallas for consultation with him and arranged to meet her at a Dallas hotel. Allison arrived at the hotel in an intoxicated condition and physically beat and sexually assaulted Dennis. Following the incident, he gave her a tranquilizer and promised to call her the next morning. Allison did not call, and Dennis checked into Baylor Medical Center where she was placed in the psychiatric unit.

■ Implied warranty is a strict liability concept. *Barbee v. Rogers*, 425 S.W.2d 342 (Tex.1968); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967); *Jacob E. Decker & Sons, Inc. v. Capps*, 139 Tex. 609, 164 S.W.2d 828 (1942). The implied warranty concept was developed by courts in an effort "to find some ground of strict liability which would make the seller in

1. Dennis did not submit any other theory of recovery to the jury nor did she argue to the court of appeals that any other theory of recovery should be sustained. Therefore, she has

waived recovery based on any ground other than implied warranty. *See* Tex.R.Civ.P. 279, *Bickler v. Bickler*, 403 S.W.2d 354 (Tex.1966).

effect an insurer of safety of the product, even though he had exercised all reasonable care and even where there was no privity of contract between the victim and the target defendant." W. Prosser & W. Keeton, *Prosser and Keeton on The Law of Torts* § 97 (5th ed. 1984).

Courts began imposing an implied warranty as a matter of public policy based on an "implied misrepresentation or promise involving an objective manifestation of an intent to guarantee." *Id.* § 98 at 692. However, it was not necessary for the consumer to be in privity with the manufacturer or prove any culpable conduct. *Id.* The remedy was a hybrid of contract and tort concepts and was based on liability without fault, i.e., "liability that is imposed on an actor apart from either (1) an intent to interfere with a legally protected interest without a legal justification for doing so, or (2) a breach of a duty to exercise reasonable care, i.e., actionable negligence." *Id.* § 75. Implied warranty imposes a duty on sellers as a matter of public policy to produce and distribute safe products regardless of proof of the sellers' fault. Prosser, *The Assault Upon the Citadel*, 69 Yale L.J. 1099 (1960). Although the implied warranty concept was originally developed in contaminated food cases, it was later used as a basis for liability in cases involving the sale of a variety of products. *Id.*

The implied warranty theory was adopted in Texas in a food contamination case. *Decker*, 164 S.W.2d 828. This court determined that a contractual remedy would be laden with privity problems and a tort cause of action would be almost impossible to prove.

In fact, a rule which would require proof of negligence as a basis of recovery would, in most instances, by reason of the difficulty of making such proof, be equivalent to a denial of recovery. It is well known that in many instances the product is processed in a distant state or in a foreign country many months prior to a discovery of the defect. It would be impracticable, if not impossible, for the consumer to prove the circumstances under which a particular can of beans or meat eaten by him had been processed. *Id.* at 834.

The implied warranty in *Decker* was "imposed by operation of law as a matter of public policy." *Id.* at 829. Implied warranty did not require proof of any representation by the seller, nor any proof that the seller was negligent. The cause of action was not based on any express or implied terms of the contract. *Id.*

The same policy reasons for creating this implied warranty based on contractual concepts but requiring no proof of fault led to the adoption by many states of Restatement (Second) of Torts § 402A. "This section accepts the principle of strict liability in tort as a more realistic theory of recovery than that of a contract warranty ..." *Prosser and Keeton on the Law of Torts*, § 98 at 693. In *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, we extended the implied warranty which was imposed as a matter of public policy in *Decker*, to "defective products which cause physical harm to persons" and adopted Restatement (Second) of Torts § 402A. *McKisson*, 416 S.W.2d at 789. Since Texas' adoption of section 402A and also the implied warranties in the Uniform Commercial Code, we have determined that "the protection of Texas consumers no longer requires the utilization of an 'implied warranty as a matter of public policy.'" *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 78 (Tex.1977) (*quoting Decker*, 164 S.W.2d at 829).

In *Nobility Homes* we determined that other remedies were available to redress wrongs resulting from the use of a defective product. We must now consider whether persons receiving professional treatment in fact situations similar to the one presented in this case have a remedy to redress wrongs committed during the course of treatment or whether it is necessary to apply a cause of action which imposes liability without fault. Although the question has not been addressed in Texas, other states recognize that a cause of action for medical malpractice or assault and

battery are appropriate remedies for a plaintiff patient who has been sexually assaulted or beaten by a physician or psychiatrist. *Greenberg v. McCabe*, 453 F.Supp. 765 (E.D.Pa.1978); *Cotton v. Kambly*, 101 Mich.App. 537, 300 N.W.2d 627 (1980); *Zipkin v. Freeman*, 436 S.W.2d 753 (Mo.1968); *Roy v. Hartogs*, 85 Misc.2d 891, 381 N.Y. S.2d 587 (N.Y.App.Div.1976).

In *Barbee v. Rogers*, 425 S.W.2d 342 (Tex.1968), we considered a situation in which a patient sued his optometrist for breach of warranty for fitting, prescribing and selling contact lenses. This court refused to hold the optometrist strictly liable in that case because the contact lenses were not "a finished product offered to the general public in regular channels of trade." *Id.* at 346. We held "[t]he considerations supporting the rule of strict liability are not present." *Id.* In a professional service situation, the client or patient can determine who is responsible for the improper conduct and pinpoint the specific wrong committed. *Hoffman v. Simplot Aviation, Inc.*, 97 Idaho 32, 539 P.2d 584, 588 (1975).

■ It is not necessary to impose an implied warranty theory as a matter of public policy because the plaintiff patient has adequate remedies to redress wrongs committed during treatment. We hold that Allison is not liable on a breach of implied warranty theory for his improper treatment of Dennis.

We affirm the judgments of the trial court and the court of appeals.

RAY, J., files a dissenting opinion in which SPEARS and KILGARLIN, JJ., join.

ROBERTSON, J., not sitting.

RAY, Justice, dissenting.

I respectfully dissent. The time has come to partially eliminate the artificial distinction between sales and services in implied warranty cases. The reasoning defect in the sales/service distinction is clearly illuminated by the facts of this cause. To hold that a psychiatrist does not impliedly warrant to his patients that he will

comply with the ethical commandments of his calling defies logic.

In *Jacob E. Decker and Sons, Inc. v. Capps*, 139 Tex. 609, 164 S.W.2d 828 (1942), this court recognized a theory of recovery, based on public policy, for a breach of implied warranty. In *Nobility Homes of Texas Inc. v. Shivers*, 557 S.W.2d 77 (Tex. 1977), this court considered "whether section 402A of the Restatement (Second) of Torts (1965) or the implied warranties of the Uniform Commercial Code allow a consumer to recover his economic loss against a manufacturer with whom the consumer is not in privity." 557 S.W.2d at 78. In deciding that issue, we concluded that the manufacturer of mobile homes was a seller of goods and that the post-*Decker* adoptions in Texas of section 402A and the implied warranties of the Uniform Commercial Code adequately provided remedies for the users of defective goods. Based on these factors, we abandoned the public policy implied warranty formulated by *Decker*. With the statutory implied warranties available to the consumer in *Nobility Homes*, it made sense to reject the implied warranty based on public policy in that case. However, that logic does not extend to the present cause. Since we are now faced with a pure service situation, and not a sale of goods, the statutory implied warranty is not available. Thus, to the extent that the language in *Nobility Homes* can be read to eliminate the public policy implied warranty in a non-sale-of-goods situation, I would overrule that case.

While I realize that courts have been reluctant to impose liability for a breach of an implied warranty by a pure service provider, I fail to understand the rationale behind this reluctance. In Texas, the attempts by our courts in dealing with hybrid sales/service situations lack a comprehensive approach and demonstrate an ad hoc decision making process. *See* Powers, *Distinguishing between Products and Services in Strict Liability*, 62 N.C.L.Rev. 415, 415–16 n. 4 (1984). Also, several commentators conclude that it is not logical to deprive consumers in service transactions

the protection afforded to the same consumers in other transactions. *See* Greenfield, *Consumer Protection in Service Transactions—Implied Warranties and Strict Liability in Tort,* 1974 Utah L.Rev. 661; Comment, *Guidelines for Extending Implied Warranties to Service Markets,* 125 U.Pa.L.Rev. 365 (1976); Note, *Continuing the Common Law Response to the New Industrial State: The Extension of Enterprise Liability to Consumer Services,* 22 U.C.L.A. L.Rev. 401 (1974); Note, *The Application of Implied Warranties to Predominently "Service" Transactions,* 31 Ohio S.L.Rev. 580 (1970). I do not go as far as some of these commentators in advocating a rule that a professional service provider *always* impliedly warrants favorable results, even though situations do exist where favorable results by the service provider are impliedly warranted. *See Broyles v. Brown Engineering Co.,* 275 Ala. 35, 151 So.2d 767, 772 (1963) (per curiam). Instead, I am of the opinion that a professional service provider, at a minimum, impliedly warrants that he will not breach the ethical commandments of his calling in providing his service.

The facts of this cause clearly demonstrate the appropriateness for such a rule. Here, Dr. Allison violated basic ethical principles of the medical profession by brutally raping and beating his emotionally disturbed and vulnerable patient. At a minimum, Ms. Dennis had a right to expect that Dr. Allison would not breach his profession's ethical commandments in the treatment he provided. I am not disturbed that the recognition of a public policy implied warranty in this cause would impose strict liability on professional service providers for breaches of their profession's ethics. I believe that Ms. Dennis is entitled to the same legal benefits that are available to the victim of a defective product. If *Barbee v. Rogers,* 425 S.W.2d 342 (Tex.1968) can be read to disallow an action for a professional's breach of the implied warranty to abide by the ethical commandments of his profession, then that case should be overruled.

Finally, I disagree with the majority's conclusion that "it is not necessary to impose an implied warranty as a matter of public policy because [Ms. Dennis] has adequate remedies to redress [the] wrongs committed [by Dr. Allison]." In my opinion, Ms. Dennis is entitled to be the architect of her lawsuit. If the facts give rise to a particular theory of recovery, then a party has the right to assert that theory, regardless of the applicability of other available theories. When the assertion of more than one theory poses the danger of a cumulative recovery, a party can be put to an election. Even so, this danger is non-existent in this cause because Ms. Dennis based her action entirely on an implied warranty theory.

In conclusion, I would allow Ms. Dennis the right to proceed against Dr. Allison for his breach of the implied warranty to abide by the ethical commandments of the medical profession. Accordingly, I would give effect to the jury findings and render judgment for Ms. Dennis.

SPEARS and KILGARLIN, JJ., join in this dissenting opinion.