683 P.2d 435

**STEINER CORPORATION,**
**Plaintiff-Appellant,**

v.

**AMERICAN DISTRICT TELEGRAPH,**
**Defendant-Respondent.**

No. 14851.

Supreme Court of Idaho.

May 30, 1984.

Gary L. Cooper of Racine, Olson, Nye & Cooper, Pocatello, for plaintiff-appellant.

Terry E. Coffin of Runft, Leroy, Stecher, Coffin & O'Riordan, Boise, for defendant-respondent.

BAKES, Justice.

Appellant Steiner Corporation (Steiner) appeals from a summary judgment granted by the trial court to American District Telegraph (ADT) on the basis of a contractual limitation of liability. We affirm the judgment of the trial court.

Steiner and ADT had contracted since 1964 for maintenance of a fire alarm system installed by ADT in Steiner's building in Blackfoot. The equipment was installed for an installation fee, and Steiner is obligated by contract to pay a yearly maintenance fee. The system was expanded to cover an adjacent building in 1968. In 1970, a new contract was entered into, providing for maintenance of the total system for an annual fee, with the contract set to run for five years with a provision for automatic yearly renewal.

The fire alarm system was divided into four zones, with one zone in the production area consisting of heat-activated, or thermostatic alarms, and the other three zones equipped with "rate of rise" alarm systems. Thermostatic alarms activate if the temperature in the part of the building where they are located rises to a level above 180° F., while the "rate of rise" alarms activate upon detection of a rapid rise in temperature. The system was controlled by two control boxes, one in the Steiner building and the other at the Blackfoot Fire Department. The control boxes were accessible only to ADT personnel.

On March 11, 1978, a fire occurred in the production area of Steiner's building, where the thermostatic fire system was installed. The fire evidently began in laundry carts in one corner of the building and smoldered for a number of hours before detection. The alarm system went off at the Blackfoot Fire Department at 2:28 a.m. When the fire crew arrived at the building the fire had spread only to a 20' × 20' area of the building, but the heat in the building, caused by the long hours of smoldering, was estimated to have been in excess of 1000° F.

Two experts engaged by Steiner concluded that a significant amount of damage

was caused by the intense heat generated by the fire. This included structural damage and damage to equipment and facilities. The experts concluded that this damage had to have been caused by temperatures up to 1400° F., and thus would not have occurred had it not been for the failure of the alarm system to activate at the proper 180° F. temperature. Losses from the "preventable" damage was estimated to be in excess of $170,000.

Investigators found that the batteries in the fire alarm system had low electrolyte levels. Inspection records revealed that the system had not been checked for some eight months before the fire, while ADT inspection bulletins required monthly inspections.

Steiner filed suit against ADT seeking to recover damages caused by the alleged failure of the alarm system. Damages were sought on theories of negligence, breach of express and implied warranties, and strict liability in tort. ADT then filed a motion for partial summary judgment, seeking to limit its liability based on the following clause in the contract between the parties:

"D. It is understood that the Contractor is not an insurer, that insurance, if any, shall be obtained by the Subscriber and that *the amounts payable* to the Contractor hereunder *are based upon the value of the services and the scope of liability* as herein set forth and are unrelated to the value of the Subscriber's property or the property of others located in Subscriber's premises. The Subscriber does not desire this contract to provide for full liability of the Contractor and *agrees that the Contractor shall be exempt from liability for loss or damage due directly or indirectly to occurrences, or consequences therefrom, which the service is designed to detect or avert*; that if the Contractor should be found liable for loss or damages due to a failure of service or equipment in any respect, *its liability shall be limited to a sum equal to ten percent of the annual service charge on $250, whichever is the greater*, and that the provi-

sions of this paragraph shall apply if loss or damage, irrespective of cause or origin, *results directly or indirectly* to person or property *from performance or nonperformance of obligations imposed by this contract or from negligence, active or otherwise, of the Contractor, its agents or employees*. The Department or other organization to which the connection is made may invoke the provisions hereof against any claims by the Subscriber due to any failure of such Department or organization." (Emphasis added.)

Based on affidavits submitted and oral argument, the trial court granted full summary judgment after an amended motion from ADT. Steiner appeals from this judgment.

The trial court ruled that Clause D, as cited above, effectively absolved ADT from any liability for damage due to failure of the equipment or maintenance provided. On appeal, Steiner argues that several bases for liability exist, including (1) strict liability in tort; (2) implied warranties; and (3) negligence. Steiner argues that since these three bases for liability exist, summary judgment was improperly granted. Steiner also argues that Clause D in the contract should be declared void as a matter of law, and thus cannot be applied so as to limit any liability that might be based on the above three theories. We find that liability of ADT cannot be based upon any of the theories of liability asserted by Steiner, and even if a basis for liability did exist, Steiner is effectively precluded from recovery by the limitation clause.

I. Bases for liability.

A. *Strict liability.*

██ Steiner claims that since ADT provided a product, and the product failed to perform properly, a cause of action for strict product liability can be maintained. However, the clear import of the contract is a contract for services only. The contract is titled "Direct-connected Service." ADT agreed to supply the fire alarm system, but by the clear terms of the contract

the system remains the property of ADT. The factual situation is unlike that of a lease, where the product is placed in the control of the lessee. Here, the "product," the fire alarm system, remained entirely in the control of ADT, and the contract obligated ADT only in the provision of service in maintaining the system. We have previously considered whether strict liability in ·tort should be applicable to contracts for services. In *Hoffman v. Simplot Aviation, Inc.*, 97 Idaho 32, 539 P.2d 584 (1975), we declined to extend strict liability to cases involving personal services.

> "Neither this court nor, with one exception, any other court has adopted strict liability in tort absent fault in the context of personal services.... We find no consideration of such extension of the rule of strict liability in either the Uniform Commercial Code or the Restatement of Torts (2d). Almost uniformly any such extension of the rule has been consistently and expressly rejected.... It is sufficient to say that as contrasted with the sales of products, personal services do not involve mass production with the difficulty, if not inability, of the obtention of proof of negligence." *Id.* at 35–36, 539 P.2d 584.

Thus, because this contract involves a contract for services, no cause of action can be maintained based on strict liability.

B. *Implied warranties.*

■■■ Under the law of Idaho, implied warranties can arise under contracts for the sale of goods, where the Uniform Commercial Code is applicable. *See* I.C. § 28–2–314, and I.C. § 28–2–315. However, the Uniform Commercial Code applies only to contracts for the sale of goods, *see* I.C. § 28–2–102, and does not apply to a contract for services. As previously discussed, the contract in question was not a contract for the sale of goods, but a contract for services. Thus, the Uniform Commercial Code does not apply, and no cause of action for implied warranties under that statute can be maintained.

C. *Negligence.*

■■ Steiner argues that it should be allowed to maintain an action for ADT's negligence in maintaining the fire alarm system. Under the contract, ADT had a duty to maintain the fire alarm system. Steiner alleges a negligent breach of this duty. However, by law Steiner can maintain an action in tort only when a breach of a tort duty is alleged, which duty arose separate and apart from the breach of contract. *Just's, Inc. v. Arrington Constr. Co.*, 99 Idaho 462, 583 P.2d 997 (1978); *McAlvain v. General Ins. Co. of America*, 97 Idaho 777, 554 P.2d 955 (1976); *Taylor v. Herbold*, 94 Idaho 133, 483 P.2d 664 (1971). *See also Aspell v. American Contract Bridge League*, 122 Ariz. 399, 595 P.2d 191 (App.1979); *Chavez v. Saums*, 1 Kan.. App.2d 564, 571 P.2d 62 (1977); *Boise Cascade Corp. v. First Security Bank of Anaconda*, 183 Mont. 378, 600 P.2d 173 (1979).

■■■ As stated in *Taylor v. Herbold, supra*:

> "To found an action in tort, there must be a breach of duty apart from the nonperformance of a contract. 52 Am.Jur. 379, Torts, § 26.
>
> "As stated in 1 C.J.S. Actions § 49(c), page 1112:
>
> " 'The mere negligent breach or non-performance of a contract will not sustain an action sounding in tort, in the absence of a liability imposed by law independent of that arising out of the contract itself, only an action ex contractu being· available. * * * However, active negligence or misfeasance is necessary to support an action in tort based on a breach of contract; *mere nonfeasance, even if it amounts to a willful neglect to perform the contract, is not sufficient.*' (Emphasis supplied.)" *Taylor v. Herbold*, 94 Idaho at 138, 483 P.2d 664.

The actions alleged to have caused damage to Steiner were clearly acts of omission or nonfeasance, as opposed to active negligence or misfeasance. Steiner alleges that ADT failed to properly perform its duty to inspect and maintain the fire alarm system. Thus, a clear duty must be shown to exist

by operation of law, separate and apart from the contractual duty to maintain the equipment. It is clear from the allegations in this complaint that such a separate duty cannot be shown. Apart from this contract, ADT could not be said to have a duty to maintain equipment in Steiner Corporation's building. Steiner has not pointed to any statutory duty of suppliers of fire alarm systems, nor pointed to any common law duty of a supplier to his customer. The only duty to which ADT could be held under the facts of this case is that which arose by virtue of the contract obligating it to maintain this fire alarm system.

■ Steiner alleges that there is a duty which arises by operation of law separate and apart from the contract, which duty is represented by the Restatement (Second) of Torts, § 323. That section is entitled "Negligent performance of undertaking to render services." It provides that one who undertakes to render services to another is subject to liability for physical harm resulting from failure to exercise reasonable care to perform the undertaking. Steiner's complaint speaks in terms of a failure to perform rather than a negligent undertaking, using language alleging ADT's liability for a "failure to inspect, repair and maintain" the system.

However, even if Steiner could allege a basis for a cause of action under any of the above theories, including under the Restatement theory, ADT is still effectively absolved from any liability by the provisions of the contractual Clause D previously set out above, as explained in Part II, *infra*.

## II. Limitation of Liability.

Clause D is a clear and unambiguous clause wherein Steiner agreed that ADT "shall be exempt from liability for loss or damage due directly or indirectly to occurrences, or consequences therefrom, which the service is designed to detect or avert," and that the exemption from liability was intended to apply "irrespective of cause or origin," whether resulting "from performance or non-performance, of obligations im-posed by this contract or from negligence, active or otherwise...." This unambiguous clause was clearly intended to apply to exclude liability under any of the bases urged by Steiner.

■ Steiner urges this Court to declare Clause D to be invalid as against public policy. We have previously considered situations where a plaintiff has contracted away legal rights and remedies. In *Rawlings v. Layne & Bowler Pump Co.*, 93 Idaho 496, 465 P.2d 107 (1970), the respondent agreed to install irrigation pumps on appellant's land. A clause in the contract specifically exempted the respondent from consequential damages, including loss or damage to crops, which resulted from the installation or performance of the irrigation pumps installed. The appellant contended that it was against public policy to allow a person to contract away his legal rights and remedies for future negligence. This Court began analysis of the problem by noting that "[f]reedom of contract is a fundamental concept underlying the law of contracts and is an essential element of the free enterprise system." *Id.* at 499, 465 P.2d 107. We went on to hold that "express agreements exempting one of the parties for negligence are to be sustained except where: (1) one party is at an obvious disadvantage in bargaining power; (2) a public duty is involved (public utility companies, common carriers)." *Id.* at 499–500, 465 P.2d 107. We then found that neither of the two factors was present in *Rawlings* and thus that the provision must be given full force and effect. The same situation is presented in this case. We are presented with a contract, freely entered into, between two large corporations. There is no obvious disadvantage in bargaining power on the part of Steiner Corporation. Nor is a public duty involved. Thus, we must give this provision full force and effect, and the effect of the provision is to limit ADT's liability under any of the alleged bases urged by Steiner. Under the circum-

stances of this case, summary judgment was properly granted by the trial court.[1]

Judgment of the district court is affirmed. Costs to respondent. No attorney fees allowed on appeal.

DONALDSON, C.J., BISTLINE, J., and OLIVER, J. pro tem., concur.

SHEPARD, J., concurs in result.

---

1. Steiner argued at oral argument on appeal (although it was not argued below) that I.C. § 29-114 should apply to invalidate the Clause D part of this contract. That code section was intended to apply only to agreements by third parties, strangers to the negligent occurrence, to indemnify the tortfeasor for liability for the occurrence. As such, it is not applicable in this case, where no third party is involved, and no indemnification situation is presented. Also, even if the statute did apply to this action, the statute specifically excludes from its effect contracts entered into before its effective date (1971), and the contract in question was entered into prior to that date.