EISMANN, Justice.
This is an appeal challenging the district court’s ruling on summary judgment that the plaintiffs action for personal injuries suffered when he fell from a climbing wall was barred by the hold harmless agreement he signed prior to engaging in that activity. We affirm the judgment of the district court.
I.
Factual Background.
As a team building exercise, Paul Morrison’s employer wanted him and his coworkers to participate in a program at Northwest Nazarene University that included a climbing wall activity. Several days prior to doing so, Morrison’s employer required him to sign an agreement prepared by the University holding it harmless from any loss or damage he might incur due to the University’s negligence or that of its employees.
Morrison was severely injured when he fell while on the climbing wall. He filed this action alleging that his injuries were caused by the negligence of the University employees who were supervising the climbing wall activity. One of Morrison’s coworkers was assigned to control the safety rope used to keep the wall climber from falling, and Morrison alleges that his fall was caused by the negligent failure of a University employee to train and supervise that eoworker.
The University moved for summary judgment on the ground that Morrison’s cause of action was barred by the hold harmless agreement. The district court agreed and dismissed this action. Morrison then timely appealed.
II.
Did the District Court Err in Failing to Invalidate the Hold Harmless Agreement Due to the Inequality in Bargaining Power?
“Freedom of contract is a fundamental concept underlying the law of contracts and is an essential element of the free enterprise system.” Rawlings v. Layne & Bowler Pump Co., 93 Idaho 496, 499, 465 P.2d 107, 110 (1970). Agreements exempting a party from liability for negligence will be upheld unless the party owes to the other party a public duty created by statute or the other party is at an obvious disadvantage in bargaining power. Lee v. Sun Valley Co., 107 Idaho 976, 978, 695 P.2d 361, 363 (1984).
In this ease, there is no allegation of any public duty that the University owed to Morrison. However, he contends that there was an obvious disadvantage in bargaining power because his employer required that he sign the hold harmless agreement. The existence of unequal bargaining power is not, by itself, sufficient to relieve a party from the provisions of a hold harmless agreement. Rather, the party must be “compelled to submit to a provision relieving the other from liability for future negligence [because] ... the party injured has little choice, as a practical matter, but to use the services offered by the party seeking exemption.” 57A Am. Jur.2d Negligence § 63 (2004). It is essentially the same test for determining whether unequal bargaining power between parties to a contract is sufficient to constitute procedural uneonseionability. See Lovey v. Regence BlueShield of Idaho, 139 Idaho 37, 42, 72 P.3d 877, 882 (2003) (“Lack of voluntariness can be shown ... by great imbalance on the *662 parties’ bargaining power with the stronger party’s terms being nonnegotiable and the weaker party being prevented by market factors, timing, or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.”)
In this case, Morrison stated in his affidavit: “My said employer told us before we went to the team building exercises that I needed to sign the release in order to participate. All employees were expected to participate and I signed it.” He also stated that he was not given the option of refusing to sign the release and it was required by his employer. Morrison was not injured by signing the release. He was injured by falling from the climbing wall. Absent from his affidavit is any statement that he told his employer that he did not want to climb the climbing wall and that his employer ordered him to do so anyway.[1]
“With respect to adult participants, the general rule is that releases from liability for injuries caused by negligent acts arising in the context of recreational activities are enforceable.” 57A Am.Jur.2d Negligence § 65 (2004). The agreement that Morrison signed stated as a separate paragraph: “The undersigned has read and voluntarily signs this release and waiver of liability and indemnity agreement. The undersigned further agrees that no oral representations, statements or inducements apart from the foregoing agreement have been made.” Morrison has not demonstrated a genuine issue of material fact showing that there was an obvious disadvantage in bargaining power sufficient to relieve him of the provisions of the hold harmless agreement that he signed.
III.
Did the District Court Err in Ruling that the Hold Harmless Agreement Was Valid and that It Applied to the Cause of Action Alleged in the Complaint?
Morrison contends that the hold harmless agreement is invalid because it is overly broad and is ineffective to bar his claim because it does not clearly identify the conduct that caused his injuries. “Interpretation of unambiguous language in a contract is an issue of law.” McDevitt v. Sportsman’s Warehouse, Inc., 151 Idaho 280, 283, 255 P.3d 1166, 1169 (2011).
The agreement is entitled “Release / Hold Harmless / Indemnity / Assumption of Risk Agreement,” and it states as follows:
Release: The undersigned, in consideration of being permitted to participate in the Northwest Nazarene University Challenge Course Adventure Program, for educational purposes does irrevocably, personally and for his or her heirs, assigns and legal representatives, release and waive any and all past, present or future claims, demands, and causes of action which the undersigned now has or may in the future have against Northwest Nazarene University, its members, directors, administrators, representatives, officers, agents, employees, and assigns, and each of them (hereinafter jointly and severally referred to as “Releasees”), for any and all past, present or future loss of or damage to property, and/or bodily injury, including death, however caused, resulting from, arising out of or in any way connected with his/her participation in or use of the Northwest Nazarene University Challenge Course Adventure Program.
Hold Harmless/Indemnity: The undersigned agrees to defend, indemnify and hold harmless the Releasees and each of them from any loss, liability, damage or cost she/he might incur due to her/his participation in or use of the Northwest Nazarene University Challenge Course Adventure Program whether caused by the negligence of the Releasees or otherwise. The undersigned further covenants not to cause any action at law or in equity to be brought or permit such to be brought in his or her behalf, either directly or indirectly, on account of loss or damage to property and/or bodily injury, including death, against the Releasees, resulting *663 from, or arising out of, or in any way connected -with any claims, demands, and causes of action which now or in the future may be asserted against the Releasees arising out of or by reason of said course described above, including any injury, loss or damage.that might occur at any place in connection therewith.
Assumption of Risk: The undersigned further states and affirms that he/she is aware of the fact that the aforesaid course, even under the safest conditions possible, may be hazardous, that he/she assumes the risks of any and all loss or of damage to property and/or bodily injury, including death, however caused, resulting out of or in any way connected with the Northwest Nazarene University Challenge Course Adventure Program; that he/she is of legal age and is competent to sign this Waiver of Claims and Release of Liability; and that he/she has read and understands all of the provisions herein contained. Risks include but are not limited to the following: [a list, of various types of actions that can cause injury and various types of injuries].
Morrison contends that the hold harmless agreement is invalid because it is overbroad. It exempts the University and “its members, directors, administrators, representatives, officers, agents, employees, and assigns, and each of them” from “any and all past, present or future claims, demands, and causes of action which the undersigned now has or may in the future have” for all “bodily injury, including death, however caused, resulting from, arising out of or in any way connected with his/her participation in or use of the Northwest Nazarene University Challenge Course Adventure Program.” It also specifically mentions negligence. The hold harmless agreement is not overbroad. It only applies to all causes of action “resulting from, arising out of or in any way connected with his/her participation in or use of the Northwest Nazarene University Challenge Course Adventure Program.”[2] Due to the dangers inherent in climbing the climbing wall, the University can certainly require such a release from anyone choosing to engage in that activity.
The agreement is likewise not inapplicable because of its failure to mention the specific conduct that is alleged to have constituted negligence in this ease. In Anderson & Nafziger v. G.T. Newcomb, Inc., 100 Idaho 175, 178, 595 P.2d 709, 712 (1979), this Court stated, “Clauses which exclude liability must speak clearly and directly to the particular conduct of the defendant which caused the harm at issue.” That language can be misinterpreted, because neither that case nor the cases it cited nor our subsequent cases have held that an exculpatory clause must list the specific, allegedly negligent conduct at issue.
The Anderson & Nafziger Court cited three .cases as support for the statement. The first one was Valley National Bank v. Tang, 18 Ariz.App. 40, 499 P.2d 991 (App.1972). In that case, the court stated “that clauses which purport to exclude liability for negligence must speak clearly and directly to the conduct at issue,” id. at 994, which it explained as meaning that an exculpatory clause would not cover negligence unless the wording was broad enough to include future negligent conduct within its scope. It stated, “The principal reason for such a construction is to assure that there has been actual agreement between the parties that the defendant shall not be liable for the consequences of future conduct which would otherwise be negligent.” Id. The second case was Missouri Pac. R. Co. v. City of Topeka, 213 Kan. 658, 518 P.2d 372 (1974). The court held that a contract requiring a railroad to “save the said City of Topeka harmless from all costs, damages and expenses for the payment of which the said city may become hable to any person or persons or corporation by reason of the granting of said right of way to said railway company,” id. at 375, was not broad enough to require the city to pay the railroad the cost of relocating its tracks due to an urban renewal project. The court stated, “As we view the ‘hold harmless’ clause, to which the railroad is deemed to have agreed, there is no suggestion it was intended to *664 provide protection against liability for expenses, loss or damage created or made necessary by actions of the city-franchisor.” Id. at 376. The third case was Walker Bank & Trust Co. v. First Sec. Corp., 9 Utah 2d 215, 341 P.2d 944 (1959), in which the beneficiary of a life insurance policy sued a bank for damages because the policy had lapsed due to the bank’s failure to charge the insured’s account with drafts for the monthly premiums. The insured had signed an authorization to pay the drafts from her account, but the bank misplaced, it. The authorization included a provision stating, “I understand and agree that your compliance herewith shall constitute a gratuity and courtesy accorded me as your customer, and that you assume or incur no liability whatsoever in the premises, and I further agree to hold you harmless of and from any and all claims arising hereunder.” Id at 947. The court held that the hold harmless agreement only barred claims resulting from the bank’s “compliance herewith,” not its failure to comply with the agreement. The court stated:
It will be noted that the language quoted above purports only to protect the bank from liability arising from its compliance with the authorization, indicating that if it did so it would “incur no liability whatsoever.” ... But there is no provision that it would be protected in the event of entire failure to fulfill the arrangement.
Id. (emphasis theirs). None of the cases held that an exculpatory clause was ineffective because the specific conduct that gave rise to the cause of action was not listed.
In Anderson & Nafziger, the buyer contracted to purchase three pivots that the seller agreed to deliver and install in mid-May, and the buyer brought an action for damages when the seller failed to do so. The purchase contract included a provision limiting the seller’s liability which stated as following:
It is hereby understood and agreed that all work ordered hereunder is precarious and uncertain in its nature, and all pulling of pumps, reinstalling pumps, repair work, alterations, well work, sand pumping, corrections, or other work herein specified, etc., shall be strictly at the Purchaser’s risk. The Seller will not be liable for damage of any land, particularly including loss or damage for diminuation or failure of crop, shortage of water, inability or failure to supply same, or for diminuation or cessation of water flow; nor shall the Seller be liable for any damages or delays of any kind on account of sticking of pump in the well in any position, either when being pulled out or being reinstated nor shall the Seller be liable for any damages on account of delay in making repairs or installing by virtue of some defect in the well, or by virtue of the well not being in condition to receive the machinery, or by virtue of unforeseen or changing conditions in the well or in or about the premises on which the well is located.
Anderson & Nafziger, 100 Idaho at 178, 595 P.2d at 712. This Court held that the clause did not preclude liability for crop loss caused by the failure to deliver the pivots because “[a] reading of the total clause indicates that 'the clause is aimed at limiting the seller’s liability for crop loss which is caused by installation or repair work done by seller.” Id. The clause listed specific types of conduct and causes of damage to which it applied. It did not have a general provision excluding liability for any delay in delivering or installing the equipment.
A review of this Court’s other eases shows that the hold harmless agreement need not specify the exact conduct that was allegedly negligent or caused harm. In II. J. Wood Co. v. Jevons, 88 Idaho 377, 400 P.2d 287 (1965), a landowner had entered into a contract for the purchase and installation of an irrigation pump in her well. The sales contract included a hold harmless agreement stating as follows:
Seller shall not be liable for damage or for consequential damage, particularly including loss or damage for diminution or failure of crops, shortage of water, or inability or failure to supply same, whether due to improper installation or performance of the machinery or otherwise ... it being understood and agreed by Buyer that this work is uncertain and precarious in its nature.
*665 Id. at 378, 400 P.2d at 289. The landowner sought damages, alleging that she suffered crop losses because “the pump never functioned properly,” because the seller “removed the pump to make repairs and failed to provide appellant with a substitute pump,” and because “in making repairs to said pump [the seller] carelessly and negligently lost the tail pipe of said pump in the well, causing an inadequate flow or supply of water during the irrigation season.” Id. at 380, 400 P.2d at 288. The trial court sustained the seller’s objection to any evidence of crop loss, and then dismissed the landowner’s claim. On appeal, this Court held that it was not error to exclude evidence of crop loss because “[t]he foregoing quoted portion of the contract is unambiguous and clearly exempts respondent from liability for crop damage.” Id. at 381, 400 P.2d at 289. There was nothing in the exculpatory clause specifying that the seller would not be liable for failing to provide the landowner with a substitute pump while hers was being repaired or for negligently losing the tail pipe in the well, both of which were conduct that she alleged caused her damage. In fact, the clause did not even include the word “negligence.”
In Rawlings v. Layne & Bowler Pump Co., 93 Idaho 496, 465 P.2d 107 (1970), the landowner entered into a contract for the purchase and installation of irrigation pumping machinery. He later brought an action seeking damages on the ground that he suffered crop loss because of the allegedly negligent installation of the pumping equipment. Paragraph 10 of the contract between the parties included an exculpatory clause stating:
Seller or Holder shall not be liable for consequential damage particularly including loss or damage for diminution or failure of crops, shortage of water, or inability or failure to supply same, due to installation or performance of the property sold hereunder, or repair work, pump or well service, nor shall Seller be liable for collapsing, telescoping, separating or otherwise injuring the well or pump, for any cause whatsoever, including negligence, since the Buyer and Seller agree that the work is hazardous and precarious in its nature....
Id. at 497, 465 P.2d at 108. The trial court dismissed the landowner’s claim based upon the above contract provision, and the landowner appealed. In upholding the dismissal, we stated, “It is our opinion that the language contained in paragraph 10 of the contract is clear and unambiguous and its effect is to preclude the seller’s liability for consequential damages such as are sought by the appellant.” Id. at 499, 465 P.2d at 110. We did not require that the exculpatory clause mention the specific conduct that was allegedly negligent. In fact, the specific conduct that allegedly constituted negligent installation was not even identified in the opinion.
In Steiner Corp. v. American District Telegraph, 106 Idaho 787, 683 P.2d 435 (1984), the plaintiff contracted with the defendant to install and maintain a fire alarm system in the plaintiffs building. The system failed to detect a fire because the defendant had not checked the electrolyte levels in the system’s batteries for eight months even though they were to be inspected monthly. The parties’ contract included a provision stating that the defendant “shall be exempt from liability for loss or damage due directly or indirectly to occurrences, or consequences therefrom, which the service is designed to detect or avert,” and that the exculpatory clause applied if the loss or damage “results directly or indirectly to person or property from performance or nonperformance of obligations imposed by this contract or from negligence, active or otherwise, of the [defendant], its agents or employees.” Id. at 789, 683 P.2d at 437. The plaintiff sued for strict liability, breach of warranty, and negligence. This Court first held that the complaint did not allege a cause of action under those theories, but then stated that even if the plaintiff could allege a cause of action it was barred by the exculpatory clause. Id. at 791, 683 P.2d at 439. We stated, “This unambiguous clause was clearly intended to apply to exclude liability under any of the bases urged by Steiner.” Id. The clause did not specifically mention the failure to inspect or maintain the batteries.
In Lee v. Sun Valley Co., 107 Idaho 976, 695 P.2d 361 (1984), the plaintiff, prior to going on a trail ride, signed a rental agree *666 ment that included an exculpatory clause stating:
Upon my acceptance of horse and equipment, I acknowledge that I assume full responsibility for my safety. I further understand that I ride at my own risk, and I agree to hold the above entity, its officers, employees, etc., harmless from every and all claim which may arise from injury, which might occur from use of said horse and/or equipment, in favor of myself, my heirs, representatives or dependents. I understand that the stable does not represent or warrant the quality or character of the horse furnished.
Id. at 977, 695 P.2d at 362. Prior to the plaintiff mounting his horse, the defendant’s employee adjusted the cinch on the saddle. During the ride, the saddle loosened, and the plaintiff was injured when it rotated and the horse reared as he was attempting to dismount. We upheld the dismissal of the plaintiffs claim on the ground that it was barred by the exculpatory clause, stating, “The agreement clearly and simply states that Sun Valley should be held ‘harmless for every and all claim which may arise from injury, which might occur from use of said horse and/or equipment,’ which is both unambiguous and applicable to the facts alleged by plaintiff.” Id. at 978, 695 P.2d at 363. The exculpatory clause did not even mention negligence, nor did it specifically list the failure to properly adjust the cinch as being within its scope. Justice Bistline dissented for that very reason. Id. at 981, 695 P.2d at 366.
Finally, in Empire Lumber Co. v. Thermal-Dynamic Towers, Inc., 132 Idaho 295, 971 P.2d 1119 (1998), a warehouse lease contained a provision stating, “Except for reasonable wear and tear and damage by fire or unavoidable casualty, Lessee will at all times preserve said premises in as good repair as they now are or may hereafter be put to....” Id. at 297, 971 P.2d at 1121. We held that the clause did not exempt the lessee from liability for fire damage caused by the lessee’s negligence, stating, “The lease language does not clearly indicate, as required by this Court’s decision in Anderson & Nafziger, that the parties intended to release TDT from liability for its negligent acts.” Id. at 300, 971 P.2d at 1124. The clause made no mention of negligence, nor could its language be construed to apply to negligence. Hold harmless agreements are strictly construed against the person relying upon them. Anderson & Nafziger, 100 Idaho at 178, 595 P.2d at 712.
The decisions of this Court have not held that a hold harmless agreement must describe the specific conduct or omission that is alleged to be negligent in order for it to bar recovery. That is consistent with the general law. “The parties to a release need not have contemplated the precise occurrence that caused the plaintiffs injuries but rather may adopt language to cover a broad range of accidents by specifying injuries involving negligence on the part of the defendant.” 57A Am.Jur.2d Negligence § 53 (2004). In this case, the agreement stated that Morrison held the University harmless “from any loss, liability, damage or cost she/he might incur due to her/his participation in or use of the Northwest Nazarene University Challenge Course Adventure Program whether caused by the negligence of the Releasees or otherwise.” That language clearly stated that the clause applied to negligence and to any loss or damage he might incur from his participation in the program. The district court did not err in dismissing his negligence claim because it was barred by the hold harmless agreement.
IV.
Is the Defendant Entitled to an Award of Attorney Fees?
In its issues on appeal, the University states that it “requests attorney fees on appeal pursuant to Idaho Code § 12-120(3), Idaho Code § 12-121, and/or Idaho Rule of Civil Procedure 54(e)(1).” However, it did not again mention attorney fees until it states in the conclusion section of its brief, “Respondent further requests an award of attorney fees on appeal pursuant to Idaho Code § 12-120(3), Idaho Code § 12-121, and/or I.R.C.P. Rule 54(e)(1).” As we held in Weaver v. Searle Brothers, 129 Idaho 497, 503, 927 P.2d 887, 893 (1996), where a party requests attorney fees on appeal but does not address the issue in the argument section of *667 the party’s brief, we will not address the issue because the party has failed to comply with Idaho Appellate Rule 35.
V.
Conclusion.
We affirm the judgment of the district court. We award the respondent costs, but not attorney fees, on appeal.
Chief Justice BURDICK, Justices W. JONES, and HORTON concur.

. We need not decide whether an employer’s demand that an employee participate in a hazardous activity would be sufficient to void a hold harmless agreement between the employee and the third party that conducted such activity.

. There is no contention that the conduct of the University employee was reckless or that the employee intentionally injured Morrison.