# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 50674-2023

ELANORE VAUGHAN, )
)
   Plaintiff-Respondent- )
   Cross Appellant, )
)
v. )
)
GATEWAY PARKS, LLC, an Idaho limited )
liability company, )
)
   Defendant-Appellant- )
   Cross Respondent. )
)

Boise, October 2024 Term

Opinion filed: June 26, 2025

Melanie Gagnepain, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Samuel A. Hoagland, District Judge.

The decision of the district court denying summary judgment is <u>reversed</u>.

Scanlan Griffiths + Aldridge, Boise, for Appellant. Naomi M. Doraisamy argued.

Hepworth Holzer, LLP, Boise, for Respondent. Andrew J. LaPorta argued.

---

ZAHN, Justice.

This permissive appeal concerns the effect of a liability waiver. Gateway Parks, LLC, operates the winter tubing and skiing/snowboarding terrain park at Eagle Island State Park. Elanore Vaughan purchased a ticket and signed an online liability waiver to go tubing at Eagle Island. The next day, Vaughan went tubing at Eagle Island and was injured after the tube she was on went over an embankment and crashed into a flatbed trailer on which snowmaking equipment was housed. Vaughan sued Gateway and asserted claims for negligence and premises liability. Gateway filed a motion to dismiss the complaint, arguing that Vaughan's claims were foreclosed by: (1) the online liability waiver she signed; and (2) the Responsibilities and Liabilities of Skiers and Ski Area Operators Act, set forth in Idaho Code sections 6-1101 through 6-1109 ("Ski Area Liability Act" or "Act").

The district court denied Gateway's motion. Gateway thereafter filed a motion for permission to appeal the denial to this Court, which was granted. On appeal, Gateway argues the district court erred in denying its motion on both arguments. We reverse the district court's decision because Vaughan's claims are barred by the liability waiver that she signed.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Gateway maintains and operates a winter sports venue at Eagle Island pursuant to a concession agreement with the Idaho Department of Parks and Recreation. The primary feature of the winter sports venue is a tubing hill, and tickets are sold by Gateway to the public.

Vaughan purchased tickets from Gateway's website to go tubing with her family. When she paid for the tickets, Vaughan electronically signed a liability waiver on Gateway's website. Vaughan and her family went tubing at Gateway the following morning. According to Vaughan, she asked a Gateway employee which tubing lane was the safest and slowest. The employee assured Vaughan she was in the safest lane. Vaughan alleges that she told the employee not to push her tube, but he did so anyway, and her tube took off down the hill.

On her way down, Vaughan hit an angled embankment at the bottom of the hill and her tube left the lane and hit a flatbed trailer parked on the other side of the embankment. The flatbed trailer had snowmaking equipment on it and was covered with bright orange tarps. Following the collision, Vaughan was stuck under the trailer and her son had to help free her. Vaughan experienced significant pain from the accident. She was later diagnosed with fractures in her lumbar and thoracic spine.

Vaughan later sued Gateway, alleging claims for negligence and premises liability. Vaughan alleged that Gateway breached its duty to exercise reasonable care by failing to inspect and maintain the tubing hill in a reasonably safe condition and creating an unnecessarily dangerous hazard by placing snowmaking equipment on a flatbed trailer at the end of the tubing run.

Gateway moved to dismiss Vaughan's complaint pursuant to Idaho Rule of Civil Procedure 12(b)(6), arguing that Vaughan's claims were precluded by the Ski Area Liability Act. Gateway argued that the Act precludes claims for injuries caused by the inherent risks of snow tubing, such as plainly visible snowmaking equipment. Gateway also argued that Vaughan's claims were barred by the liability waiver she signed because she assumed the risk for injury from variable snow and weather conditions; manmade obstacles, such as snowmaking equipment; and other hazards of snow tubing.

2

Vaughan responded that the Act did not apply to her case because Gateway was not a ski area operator and she was not a skier under the Act. Vaughan also argued that, even if the Act applied, parking a trailer at the end of a tubing hill is not an inherent risk of skiing under the Act. Finally, Vaughan argued that the liability waiver did not preclude her claims because a flatbed trailer was not a hazard of tubing.

Gateway's motion to dismiss relied on matters outside the pleadings; therefore, the district court gave the parties notice that it intended to treat the motion as one for summary judgment pursuant to Rule 12(d). The parties thereafter submitted supplemental briefing and declarations. The court then heard oral argument and took the matter under advisement.

The district court later issued a written decision denying Gateway's motion. The district court concluded that the Act applied because Gateway was a ski area operator and Vaughan was a skier for purposes of the Act. However, the district court concluded that there was a genuine issue of material fact as to whether the placement of the snowmaking equipment on a trailer at the bottom of the tubing hill was an attempt to eliminate, alter, control, or lessen the inherent risks of tubing. Lastly, the district court concluded that the liability waiver did not preclude Vaughan's claims concerning the allegedly negligent placement of the trailer and snowmaking equipment.

Gateway moved for leave to file a permissive appeal of the denial of its motion for summary judgment, which the district court granted, and this Court accepted. Vaughan subsequently cross-appealed the district court's determination that Gateway is a ski area operator under the Act.

## II.    ISSUES ON APPEAL

1. Did the liability waiver preclude Vaughan's claims against Gateway?
2. Is Gateway entitled to attorney fees on appeal?

## III.    STANDARDS OF REVIEW

When reviewing a district court's decision on summary judgment, "[t]his Court employs the same standard as the district court[.]" *Owen v. Smith*, 168 Idaho 633, 640, 485 P.3d 129, 136 (2021) (quoting *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 140, 456 P.3d 201, 209 (2019)). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Id*. (quoting I.R.C.P. 56(a)). "A moving party must support its assertion by citing particular materials in the record or by showing the 'materials cited do not establish the . . . presence of a genuine

dispute, or that an adverse party cannot produce admissible evidence to support the fact[s].' " *Id.* (quoting I.R.C.P. 56(c)(1)(B)). "Summary judgment is improper 'if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.' " *Id.* at 641, 485 P.3d at 137 (quoting *Trumble*, 166 Idaho at 141, 456 P.3d at 210). A "mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id.*

## IV.    ANALYSIS

**A. The electronic liability waiver that Vaughan signed precludes her claims against Gateway.**

The parties raise several arguments in their cross appeals, the majority of which relate to the interpretation and application of the Act. However, we decline to address those issues because we hold that the electronic waiver that Vaughan signed when she purchased her tubing ticket precludes her claims.

When Vaughan purchased her ticket to go tubing, she signed an electronic liability waiver acknowledging there was a risk of collision with manmade objects while tubing, assuming the risk of injury from the collision, and agreeing not to make any claim against Gateway for harm resulting from the risk:

> By purchasing or using this ticket, *I agree and understand that skiing (which includes snowboarding, snowmobiling and tubing) is hazardous. Conditions Vary* [sic] *constantly* because of weather changes and skier use, among other things. *Obstacles also exist.* Bare spots, bumps, moguls, stumps, forest trees, debris, rocks, ice and variations in snow and terrain are present within this area. *There are also manmade obstacles such as lift towers*[,] *poles, roads, trail markings, and snow making equipment.* Snow making and snow grooming may be in progress at any time. There are also others using the mountain. *Falls and collisions do occur.* It is my responsibility to ski with care and in control at all times to reduce the risk of injury[.] I will observe all signs and other warning [sic] and instructions. *I expressly assure* [sic] *the risk that injury, damage, or death may result from these and other hazards of the sport. I further agree that I will make no claim against the area* or its owners, employees or contractors *for any harm resulting from these risks.* I agree that this ticket may be revoked without refund at any time for misconduct or nuisance.

(Emphasis added.)

In her complaint, Vaughan alleged claims for negligence and premises liability. Vaughan alleged that Gateway breached its duty to exercise reasonable care by failing to inspect and maintain the tubing path in a reasonably safe condition. She also alleged that Gateway created an

4

unnecessarily dangerous hazard when it placed snowmaking equipment on a flatbed trailer at the bottom of the tubing hill.

In its motion for summary judgment, Gateway argued that the liability waiver precludes Vaughan's claims because she seeks to recover damages for injuries caused by "manmade obstacles such as snowmaking equipment." In its order denying Gateway's motion, the district court concluded that the waiver Vaughan signed was not broad enough to preclude her claims because "[t]he allegedly negligent placement of the snowmaking equipment is not necessarily a 'hazard' of tubing nor does the agreement waive Gateway's negligence."

On appeal, Gateway argues that the district court erred because under this Court's decision in *Morrison v. Northwest Nazarene University*, 152 Idaho 660, 664, 273 P.3d 1253, 1257 (2012), hold harmless agreements for recreational activities do not need to specify the exact conduct that was allegedly negligent or caused the harm. In response, Vaughan argues that the district court correctly concluded that placing a trailer with snowmaking equipment near the end of the tubing hill was a negligent act that fell outside the scope of the waiver.

Resolving these competing arguments requires us to construe the terms of the liability waiver that Vaughan signed. "Agreements exempting a party from liability for negligence will be upheld unless the party owes to the other party a public duty created by statute or the other party is at an obvious disadvantage in bargaining power." *Morrison*, 152 Idaho at 661, 273 P.3d at 1254 (citing *Lee v. Sun Valley Co.*, 107 Idaho 976, 978, 695 P.2d 361, 363 (1984)). "With respect to adult participants, the general rule is that releases from liability for injuries caused by negligent acts arising in the context of recreational activities are enforceable." *Id.* at 662, 273 P.3d at 1255 (quoting 57A Am. Jur. 2d *Negligence* § 65 (2004)). "Freedom of contract is a fundamental concept underlying the law of contracts and is an essential element of the free enterprise system." *Id.* at 661, 273 P.3d at 1254 (quoting *Rawlings v. Layne & Bowler Pump Co.*, 93 Idaho 496, 499, 465 P.2d 107, 110 (1970)).

In *Morrison*, we considered whether a hold harmless agreement released the university from an individual's claim related to injuries suffered when he fell from the university's climbing wall. *Id.* at 662–66, 273 P.3d at 1255–59. The agreement purported to exempt the university from " 'any and all past, present or future claims, demands, and causes of action which the undersigned now has or may in the future have' for all 'bodily injury, including death, however caused, resulting from, arising out of or in any way connected with his/her participation in or use of the

Northwest Nazarene University Challenge Course Adventure Program.' " *Id.* at 663, 273 P.3d at 1256. We analyzed our prior decisions concerning the scope of liability waivers and concluded that hold harmless agreements did not need to specify the exact conduct that was allegedly negligent or caused harm. *Id.* at 663–66, 273 P.3d at 1256–59. "The decisions of this Court have not held that a hold harmless agreement must describe the specific conduct or omission that is alleged to be negligent in order for it to bar recovery." *Id.* at 666, 273 P.3d at 1259.

Here, the electronic waiver signed by Vaughan expressly acknowledged that tubing was hazardous; that conditions varied constantly; that obstacles existed, including manmade obstacles such as snowmaking equipment; and that falls and collisions occurred in the course of tubing. Vaughan expressly assumed the risk of injury resulting from "these and other hazards of the sport." Moreover, Vaughan agreed to "make no claim against the area or its owners, employees or contractors for any harm resulting from these risks."

Vaughan was injured after she collided with a flatbed trailer holding snowmaking equipment. The trailer was a manmade obstacle that held equipment used to make snow for the tubing hill. As such, the trailer is similar to the enumerated examples of manmade obstacles of "lift towers[,] poles, roads, trail markings, and snow making equipment." Moreover, the waiver is not limited to the identified examples of manmade obstacles: "[t]here are also manmade obstacles *such as* . . . snow making equipment."

While the signed electronic waiver did not describe the specific conduct that Vaughan alleged caused her injuries, it encompassed injuries resulting from collisions with manmade obstacles, such as the flatbed trailer holding the snowmaking equipment. *Morrison* holds that an exculpatory clause does not need to list the specific, allegedly negligent conduct at issue to be enforceable. The list of manmade objects in Vaughan's waiver is not exhaustive. The flatbed trailer that held the snowmaking machine was similar in nature to the examples identified in the waiver. Vaughan waived all claims against Gateway for any harm resulting from the snowmaking equipment or the flatbed trailer on which it sat. For these reasons, we hold that the unambiguous language of the waiver precludes Vaughan's claims.

The dissent, relying primarily on out-of-state caselaw and secondary sources, asserts that we interpret the liability waiver too broadly and that whether the language of the waiver encompasses a trailer housing snowmaking equipment is a question first for the jury. However, we have routinely decided the scope of a liability waiver as a matter of law. *See Morrison*, 152 Idaho

6

at 666, 273 P.3d at 1259 (2012); *Jesse v. Lindsley*, 149 Idaho 70, 76, 233 P.3d 1, 7 (2008); *Lee*, 107 Idaho at 978, 695 P.2d at 363. Determining the legal effect of an unambiguous legal instrument is a question of law for this Court. *Knipe Land Co. v. Robertson*, 151 Idaho 449, 455, 259 P.3d 595, 601 (2011).

We have carefully laid out why this Court's caselaw and the language of the waiver encompass Vaughan's accident. While the liability waiver Vaughan signed does not specifically reference a trailer holding snowmaking equipment, we have explained that the waiver language is not limited to the specifically-identified manmade obstacles. As previously discussed, we held in *Morrison* that an exculpatory clause does not need to list the specific, allegedly negligent conduct at issue to be enforceable. 152 Idaho at 666, 273 P.3d at 1259. The unambiguous language of the liability waiver acknowledged that tubing was hazardous and encompassed injuries resulting from snow conditions and collisions with manmade obstacles, such as the flatbed trailer holding the snowmaking equipment. Our holding today simply applies the language of the liability waiver that Vaughan signed.

Vaughan argues that, pursuant to this Court's decision in *Jesse*, 149 Idaho at 75, 233 P.3d at 6, liability waivers are "disfavored" and must be " 'strictly' construed" against Gateway. Vaughan argues that the waiver should be interpreted narrowly to only preclude claims arising from those hazards of tubing that are specifically identified in the waiver, which did not list the allegedly negligent placement of snowmaking equipment.

Our decision in *Jesse*, however, is distinguishable. In that case, we considered the enforceability of an exculpatory clause in a lease agreement that purported to "absolve a landlord from liability for accidental injuries sustained by the tenant." 149 Idaho at 73, 233 P.3d at 4. We concluded that the lease clause was in contravention of public policy and overbroad, and was therefore unenforceable. *Id.* at 7–8, 233 P.3d at 76–77. Our decision in *Jesse* is not applicable here because we are not considering a contractual exculpatory clause in a lease agreement.

Much more applicable is our decision in *Morrison* four years later. Our decision in *Morrison* concerned the applicability of a hold harmless agreement in a recreational context, similar to the applicability of the liability waiver that Vaughan signed prior to participating in the recreational activity of tubing. In *Morrison*, we did not construe the hold harmless agreement against the party that drafted it. 152 Idaho at 662, 273 P.3d at 1255. Rather, we stated that, when it comes to adults participating in recreational activities, "the general rule is that releases from

7

liability for injuries caused by negligent acts . . . are enforceable." *Id.* (quoting 57A Am. Jur. 2d *Negligence* § 65 (2004)). Because *Morrison* is specific to waivers arising in the recreational activity context, we apply its general rule here and decline to construe the waiver against Gateway.

Vaughan chose to sign a liability waiver prior to engaging in tubing activity. We will not disregard this Court's precedent concerning the applicability of liability waivers to recreational activities or the "[f]reedom of contract" that "is a fundamental concept underlying the law of contracts and is an essential element of the free enterprise system." *Id.* at 661, 273 P.3d at 1254 (quoting *Rawlings*, 93 Idaho at 499, 465 P.2d at 110). We hold that the unambiguous language of the waiver precludes Vaughan's claims. We therefore reverse the district court's denial of summary judgment. On remand, we direct the district court to grant summary judgment in favor of Gateway and dismiss Vaughan's complaint. Because Vaughan's claims are precluded by the liability waiver, we do not need to address the parties' arguments regarding the applicability of the Act.

## B. Gateway is not entitled to attorney fees on appeal.

Vaughan does not request attorney fees on appeal. Gateway argues it is entitled to attorney fees under Idaho Appellate Rule 41 and Idaho Code section 12-120(3). However, section 12-120(3) does not apply here. "Idaho Code section 12-120(3) applies when 'the commercial transaction comprises the gravamen of the lawsuit.'" *Idaho Transp. Dep't v. Ascorp, Inc.*, 159 Idaho 138, 141, 357 P.3d 863, 866 (2015) (quoting *Brower v. E.I. DuPont De Nemours & Co.*, 117 Idaho 780, 784, 792 P.2d 345, 349 (1990)). The gravamen of Vaughan's lawsuit is a tort, not a commercial transaction between the parties. *See Genho v. Riverdale Hot Springs, LLC*, 174 Idaho 894, ___, 560 P.3d 1041, 1057 (2024) (concluding that when an independent, tortious behavior causes the tort damages and a related commercial transaction was not an element of the tort claim, attorney fees pursuant to section 12-120(3) are not proper). Therefore, we decline to award Gateway attorney fees on appeal.

## V.    CONCLUSION

The district court's decision denying Gateway's motion for summary judgment is reversed and we direct the district court to grant summary judgment in favor of Gateway on remand. As the prevailing party, Gateway is awarded costs on appeal pursuant to Idaho Appellate Rule 40.

Justice MEYER and Pro Tem Justice WHITNEY CONCUR.

8

BEVAN, Chief Justice, dissenting.

This appeal involves the applicability of the Idaho Skier Act, Idaho Code section 6-1101, *et seq*. ("the Act") and the effect of a liability waiver. Because I do not believe that the electronic waiver barred Vaughan's claims, I would evaluate the applicability of the Act. Accordingly, I respectfully dissent from the majority's holding that the electronic liability waiver that Vaughan signed precludes her claims against Gateway.

**A. The electronic liability waiver that Vaughan signed did not preclude her claims against Gateway.**

Construing the language of the waiver, the majority concludes that Vaughan "expressly assumed the risk of injury resulting from 'these and other hazards of the sport.'" While I acknowledge that the language of the waiver precludes claims against Gateway for injuries stemming from "hazards of the sport," I would hold that whether Gateway's placement and potential storage of the snowmaking equipment at the end of a tubing run was encompassed by the electronic waiver signed by Vaughan is a question of fact for a jury to decide.

Neither party disputes that Vaughan electronically signed a digital waiver, though Gateway maintains that the district court erred in finding that the waiver was not broad enough to cover the risks involved in the occurrence that gave rise to Vaughan's injury. The district court found that negligent placement of snowmaking equipment is "not necessarily a 'hazard' of tubing"; thus, the waiver was not broad enough to cover Gateway's alleged negligent placement of its snowmaking equipment. Vaughan supports the district court's reasoning, arguing that the waiver only precludes claims caused by the "risks" or "hazards of the sport," and the "negligent placement of snowmaking equipment" is outside the waiver's language.

As an initial point, I note that liability waivers or exculpatory clauses in contracts are generally disfavored in the law. This Court recognized this premise in *Jesse v. Lindsley:* "courts look with disfavor on such attempts to avoid liability and construe such provisions strictly against the person relying on them, especially when that person is the preparer of the document." 149 Idaho 70, 75, 233 P.3d 1, 6 (2008) (analyzing an exculpatory clause in a real property lease). This is not to say that such clauses are void against public policy, but that "[t]his Court will . . . construe [such a] clause strictly against [the drafter], and the clause must speak clearly and directly to the conduct to be immunized from liability." *Id*.; *see also Morrison v. Nw. Nazarene Univ.*, 152 Idaho 660, 663, 273 P.3d 1253, 1256 (2012) (quoting *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100

9

Idaho 175, 178, 595 P.2d 709, 712 (1979)). Thus, how a business chooses to word its wavier is important. That said,

> "[t]he parties to a release need not have contemplated the precise occurrence that caused the plaintiff's injuries but rather may adopt language to cover a broad range of accidents by specifying injuries involving negligence on the part of the defendant."

*Id*. at 666, 273 P.3d at 1259 (quoting 57A AM.JUR.2d *Negligence* § 53 (2004)).

The question here is whether the scope of Gateway's waiver covers the "broad range of accidents" that included Vaughn's allegations. It is not our role, in the first instance, to review this question as a matter of law. While the scope, sufficiency, and validity of an exculpatory clause present questions of law, "[t]he nature of an aggrieved party's conduct as within the scope of an exculpatory clause presents a factual issue." 17B C.J.S. *Contracts* § 1033. *See, e.g.*, *Hillerson v. Bismarck Pub. Sch.*, 840 N.W.2d 65, 72 (N.D. 2013) ("ambiguous waiver creates a question of fact to be determined by the aid of extrinsic evidence"); *Hawkins v. Capital Fitness, Inc.*, 29 N.E.3d 442, 447 (IL App. 2015) ("Whether the particular injury ordinarily accompanies a certain activity and whether the plaintiff understands and assumes the risk associated with the activity often is a question of fact."); *see also* 17B C.J.S. *Contracts* § 1033 ("Questions of fact may be presented as to whether a particular injury is one which accompanies a certain activity and whether the subject party appreciates and assumes the risk, in determining the validity of an exculpatory clause.").

Vaughan and her family purchased tickets on January 8, 2022, for a 9:00 a.m. tubing session on January 9. Before buying her ticket, Gateway required Vaughan—and all patrons—to sign a waiver. The waiver stated:

> By purchasing or using this ticket, I agree and understand that skiing (which includes snowboarding, snowmobiling and tubing) is hazardous. Conditions Vary [sic] constantly because of weather changes and skier use, among other things. Obstacles also exist. Bare spots, bumps, moguls, stumps, forest trees, debris, rocks, ice and variations in snow and terrain are present within this area. There are also manmade obstacles such as lift towers[,] poles, roads, trail markings, and snow making equipment. Snow making and snow grooming may be in progress at any time. There are also others using the mountain. Falls and collisions do occur. It is my responsibility to ski with care and in control at all times to reduce the risk of injury[.] I will observe all signs and other warning [sic] and instructions. I expressly assure [sic] the risk that injury, damage, or death may result from these and other hazards of the sport. I further agree that I will make no claim against the area or its owners, employees or contractors for any harm resulting from these risks. I agree that this ticket may be revoked without refund at any time for misconduct or nuisance.

10

The district court relied on *Morrison*, to evaluate whether the scope of Gateway's waiver barred Vaughan's claim. In *Morrison*, an employee and his coworkers were participating in a wall climbing activity to promote team building at Northwest Nazarene University. 152 Idaho at 661, 273 P.3d at 1254. Before climbing, the employer required the employee to sign an agreement that the University prepared, holding the University harmless for *any* loss or damage that might occur from the University's negligence or that of its employees. *Id.* The employee was injured when he fell while climbing the wall. He sued the University, alleging his fall was caused by the negligent failure of a University employee to train and supervise a coworker who was assigned to control a safety rope designed to keep the wall climber from falling. *Id.* The University moved for summary judgment on the ground that Morrison's cause of action was barred by the hold harmless agreement. The district court agreed and dismissed the action. On appeal, the employee argued that the waiver was invalid because it was overly broad. *Id.* at 662, 273 P.3d at 1255. This Court disagreed, explaining that the language in the waiver covered all causes of action "resulting from, arising out of or in any way connected with [Morrison's] participation in or use of the" University's Challenge Course Adventure Program. The release thus extended to the University's alleged negligence because it "clearly stated that the clause applied to negligence and to any loss or damage [Morrison] might incur from his participation in the program." *Id.* at 663, 273 P.3d at 1256. The Court added that exculpatory clauses need not list the specific negligent conduct at issue. *Id.*

Vaughan relies on *Anderson & Nafziger v. G.T. Newcomb, Inc.*, 100 Idaho 175, 177, 595 P.2d 709, 711 (1979), to support her argument that the waiver language did not cover the conduct alleged here. In *Anderson & Nafziger*, a buyer entered a contract to buy three pivot irrigation systems that the seller would deliver and install in mid-May. *Id*. The seller failed to do so, and the buyer sued for damages. *Id*. Within the purchase contract was language limiting the seller's liability:

> It is hereby understood and agreed that all work ordered hereunder is precarious and uncertain in its nature, and all pulling of pumps, reinstalling pumps, repair work, alterations, well work, sand pumping, corrections, or other work herein specified, etc., shall be strictly at the Purchaser's risk. The Seller will not be liable for damage of any kind, particularly including loss or damage for diminuation [sic] or failure of crop, shortage of water, inability or failure to supply same, or for diminuation [sic] or cessation of water flow; nor shall the Seller be liable for any damages or delays of any kind on account of sticking of pump in the well in any position, either when being pulled out or being reinstated nor shall the Seller be liable for any damages on account of delay in making repairs or installing by virtue

11

of some defect in the well, or by virtue of the well not being in condition to receive the machinery, or by virtue of unforeseen or changing conditions in the well or in or about the premises on which the well is located.

*Id.* at 178, 595 P.2d at 712.

This Court held that the language was not broad enough to preclude liability for crop loss from the seller's failure to deliver the pivots because "[a] reading of the total clause indicates that the clause is aimed at limiting the seller's liability for crop loss which is caused by installation or repair work done by seller." *Id.* Because the clause listed specific conduct and causes for damage that would make it applicable, rather than a general provision limiting liability for any delays, the waiver did not bar the buyer's claims. *Id.*

It is important to note that the *Morrison* Court evaluated the holding in *Anderson & Nafziger*, questioning a statement by this Court where it was stated: "Clauses which exclude liability must speak clearly and directly to the particular conduct of the defendant which caused the harm at issue." 152 Idaho at 663, 273 P.3d at 1256. The Court in *Morrison* noted that such "language can be misinterpreted, because neither [*Anderson & Nafziger*] nor the cases it cited nor our subsequent cases have held that an exculpatory clause must list the specific, allegedly negligent conduct at issue." *Id.* Thus, "[t]he parties to a release need not have contemplated the precise occurrence that caused the plaintiff's injuries but rather may adopt language to cover a broad range of accidents by specifying injuries involving negligence on the part of the defendant." *Id.* at 666, 273 P.3d at 1259 (quoting 57A Am.Jur.2d *Negligence* § 53 (2004)). *See also Groves v. Firebird Raceway, Inc.*, 67 F.3d 306 (9th Cir. 1995) ("Where the clear purpose of the release is to preclude all liability [] the parties need not have contemplated the precise occurrence which resulted in harm."). However, *Morrison* did not overrule *Anderson & Nafziger*. In fact, the Court recognized that the waiver in *Anderson & Nafziger* was limited because it "listed specific types of conduct and causes of damage to which it applied. It did not have a general provision excluding liability for any delay in delivering or installing the equipment." *Id.* at 664, 273 P.3d at 1257.

I certainly agree with these general statements. The majority relies on the proposition from *Morrison* that precise conduct need not be included in a waiver to make it effectual. That said, the result goes too far to hold that a person on a tubing hill who collides with a *trailer* holding snowmaking equipment comes within the broad reach of Gateway's waiver *as a matter of law*. That conclusion might be correct, but it is a question for the jury to decide, not this Court.

12

I would thus conclude that the circumstances of this case are distinguishable from *Morrison* and the errant rationale in *Anderson & Nafziger*. The hold harmless agreement that Morrison signed stated that the clause applied to negligence and to *any loss or damage* he might incur from his participation in the program. The waiver that Vaughan signed *limited* Gateway's liability to enumerated risks (e.g., language in the waiver proclaimed, "I will make no claim against the area its owners, employees or contractors for any harm resulting from *these* risks.") (emphasis added). Indeed, the distinction between *Morrison* and this case is the broad language used in the release in *Morrison*. If that release had used specific language that limited liability to the hazards of rock climbing, and the plaintiff had slipped on a puddle from the water fountain, the result in *Morrison* would have been very different. It is Gateway that chose to use specific and limiting language in its waiver. By doing so, it restricted, *as a matter of law*, the scope of the waiver in this case, placing this case outside the holding in *Morrison*.

Vaughan did not run into snowmaking equipment located on the tubing run. She went over an embankment, became airborne, left the tubing run, and collided with a trailer housing snowmaking equipment enfolded in tarps that was located outside the bounds of the tubing run. The majority does not grapple with this distinction. While the clause need not list every conceivable manner in which skiers (tubers) could be injured, to construe the waiver how the majority does broadens the language Gateway chose to use, and grants it immunity as a matter of law against *any and all* causes of action. The effect of this holding is to grant complete immunity to a company, regardless of the language it chooses to encompass its waiver. Such an interpretation is simply too broad. Gateway itself limited the scope of its waiver to injuries that "may result from . . . hazards of the sport." The majority's interpretation would rewrite this provision to encompass any injury that could occur. The plain, unambiguous language of the waiver does not go that far. Thus, I would hold that the scope of the waiver and its applicability to the facts here is a matter for the jury to decide.

I recognize that Gateway points out that the agreement waives liability for "manmade obstacles such as lift towers, poles, roads, trail markings, and *snow[making] equipment*." (Emphasis added). But whether the *trailer* holding the equipment that injured Vaughan falls within the scope of the waiver is a question of fact for a jury to decide. *See* 17B C.J.S. *Contracts* § 1033 ("Questions of fact may be presented as to whether a particular injury is one which accompanies a certain activity and whether the subject party appreciates and assumes the risk, in determining

13

the validity of an exculpatory clause."). It is a hallmark principle that questions of fact are within the province of the jury. *McShane v. Quillin*, 47 Idaho 542, 277 P. 554, 561 (1929) ("The nature of the agreement was for the jury. Its legal effect was for the court."). Thus, I would hold that a jury question remains as to whether Gateway's placement and potential storage of the snowmaking equipment at the end of a tubing run was encompassed by the electronic waiver signed by Vaughan.

**B. The Ski Liability Act does not bar Vaughan's claims.**

The majority declines to evaluate the application of the Act because it concludes that Vaughan was precluded from pursuing her claims against Gateway under the terms of the electronic liability waiver she signed. Given that outcome, I do likewise and will not weigh-in on that part of the appeal before us.

Accordingly, I dissent.

Justice MOELLER CONCURS.